CITY OF XENIA, Appellee,

v.

BOEHMAN, Appellant.

[Cite as *Xenia v. Boehman* (1996), 114 Ohio App.3d 78.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 95–CA–0117.

Decided Sept. 13, 1996.

*Clinton Ralph Wilcoxson II,* for appellee.

*Louis I. Boehman, pro se.*

GRADY, Judge.

Louis I. Boehman, appearing *pro se,* appeals from his conviction in Xenia Municipal Court for speeding, in violation of Xenia Codified Ordinances 335.05.

App.R. 16(A) requires an appellant to present a statement of assignments of error for review. Boehman has failed to do that. However, a reading of his brief prompts us to conclude that Boehman has assigned error in the following respects.

First Assignment of Error

"Boehman's conviction is against the manifest weight of the evidence."

In reviewing either the weight or sufficiency of the evidence supporting a conviction, the same test is applied. Our function is to examine the evidence admitted at trial and to determine whether such evidence, if believed, would

convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *Id.* On the trial of a case, either civil or criminal, the weight to be given the evidence and credibility of the witnesses are primarily for the trial court. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. An appellate court abuses its discretion by substituting its judgment for that of the trier of fact as to the credibility of witnesses. *State v. Walker* (1978), 55 Ohio St.2d 208, 9 O.O.3d 152, 378 N.E.2d 1049.

Xenia Police Patrolman Fred Meadows testified that he clocked Boehman's speed on the K–55 radar unit in his police cruiser as seventy-three miles per hour. Meadows further testified that Boehman was traveling at that speed in a zone in which the maximum posted speed is fifty-five miles per hour.

■ Boehman contends that Officer Meadows lied concerning the lane in which Boehman was traveling, the speed at which he traveled, Meadows's use of the radar to determine Boehman's speed, and the effect of broadcasting towers on the operation of his radar unit. These arguments raise issues concerning Meadows's credibility, and are primarily for the trial court. *State v. DeHass, supra.* That court presumably chose to believe Officer Meadows, implicitly rejecting Boehman's attacks on his credibility. We may not substitute our judgment for that of the trial court in that respect. *State v. Walker, supra.*

■ Boehman sought to impeach Officer Meadows's credibility through questions calculated to demonstrate that his vehicle was incapable of traveling at seventy-three miles per hour and that Officer Meadows had misrepresented Boehman's speed. The following in the trial transcript.

"[BY MR. BOEHMAN]: Was my engine running when you pulled me over and when you approached my vehicle?

"A. I don't remember.

"Q. Did you observe whether or not my vehicle was diesel powered or gasoline powered?

"MS. GOLDIE: Objection, I don't see what that relevance is.

"THE COURT: Sustained. It doesn't make any difference. Let's go on.

"Q. Now, I think your testimony was that when you saw me I was in the righthand lane, you saw me east of Xenia, or east of Home Avenue, is that correct, at the Xenia corporation limit? Is that—I think that is where you testified you first saw my vehicle, is it not?

"A. Somewhere just inside the corporation limits, that's correct.

"Q. How long is the corporation limits in that section?

"A. I'm going to estimate it to be about a half mile, 3 quarters of a mile, maybe. I've never measured it.

"Q. Would it surprise you if I had told you that I had measured it and it's—

"A. Wouldn't surprise me at all.

"THE COURT: That is not a question, sir, so—

"Mr. Boehman: Okay.

"Q. So you said you saw me change from the right-hand lane to the left-hand lane and speed up to two miles per hour, from 71 to 73.

"A. That's correct.

"Q. What was the speed at which you ticketed the previous driver?

"MS. GOLDIE: Objection.

"MR. BOEHMAN: And—

"THE COURT: It's irrelevant. Let's go.

"Q. What time did you ticket the previous driver?

"MS. GOLDIE: Objection

"THE COURT: Sustained.

"MR. BOEHMAN: Your Honor, I think it's very important for my case here.

"THE COURT: Well, I don't. So go on.

"Q. Where exactly was your car parked when you were running stationary radar?

"A. I was north of the turn around that is located in the medial strip there on 35.

"Q. Would you want to estimate how far north?

"A. I don't really remember exactly.

"Q. Do you know where there are signs in the median at the turn around saying, 'No U-turn Permitted,' or something of that sort?

"A. I believe there is, yes.

"Q. Were there two signs, one for traffic heading in your orientation north-bound, one for heading southbound?

"A. I believe there is but I couldn't swear to it.

"Q. Was there anybody with me in my automobile at the time?

"A. Yes, there was a female.

"Q. You also said that you offered to let me look at the radar, your radar screen.

"A. That's correct.

"Q. Your radar output. Is it not true that I demanded to look at it and you then said I could, is that not—

"A. That is also correct.

"Q. Which one is accurate, that you offered or—

"A. I—

"THE COURT: Sir, It really doesn't make any difference, so let's go on."

Each of the foregoing lines of questioning, while not artfully presented, sought responses that could impeach Officer Meadows's credibility with respect to his testimony that Boehman was traveling at seventy-three miles per hour. Boehman had a right to seek to impeach Officer Meadows's credibility. Evid.R. 607. The evidence he sought was relevant to that purpose. Evid.R. 401. All relevant evidence is admissible. Evid.R. 402. As the issue involved was critical to Boehman's guilt or innocence, the court's rulings affected his substantial rights. Therefore, Boehman was not required to make an offer of proof in order to demonstrate an abuse of discretion as the evidence was excluded during cross-examination. Evid.R. 103(A)(2).

Boehman's conviction is not against the manifest weight of the evidence that was presented at trial. However, Boehman's ability to contest the weight of that evidence, at trial and on appeal, was prejudiced by the court's rulings.

The first assignment of error is sustained.

Second Assignment of Error

"Officer Meadows was not competent to testify concerning use of the K–55 radar unit."

Boehman contends that the trial court erred when it permitted Officer Meadows to testify concerning Boehman's speed as determined by the reading obtained from Meadows's K–55 radar unit because Meadows was not sufficiently familiar with its operation. More specifically, Boehman contends that Meadows did not know what the frequency of the unit was and how it might produce false readings.

Officer Meadows testified that he'd received eight hours training in use of the K–55 radar unit. Whether that training was a sufficient foundation for his testimony concerning his use of the K–55 radar unit to determine Boehman's speed is a question reserved for the sound discretion of the trial court. Evid.R.

702. Courts have taken judicial notice of the reliability of radar units of this kind. *Cleveland v. Ferell* (1958), 168 Ohio St. 298, 7 O.O.2d 6, 154 N.E.2d 630. Therefore, the question for the trial court was whether Meadows's training was sufficient to demonstrate him to be competent to testify concerning his use of the K–55 unit.

Boehman contends that the trial court unreasonably prevented him from asking Officer Meadows questions that would demonstrate his lack of competence to use the K–55 radar unit. The following colloquies from Boehman's cross-examination of Officer Meadows support that contention:

"[BY MR. BOEHMAN]: Are you aware of what circumstances can lead to false readings on the type of radar you were using? In other words, what were you taught in radar school about what can cause false readings?

"MS. GOLDIE: I'm going to object to the relevance of this, Your Honor.

"THE COURT: I don't see any relevance in it. Let's go on.

"* * *

"Q. What conditions have to exist for Doppler shift police radar to give accurate vehicles speed measurements?

"MS. GOLDIE: Objection.

"THE COURT: Sustained.

"A. I'm not sure.

"THE COURT: I sustained the objection. Let's go on."

Each of the foregoing were questions that Boehman was entitled to ask in order to rebut evidence that Officer Meadows was competent to use the K–55 radar unit to determine the speed at which he was traveling. The trial court abused its discretion when it prohibited them, resulting in prejudice to Boehman for the reasons discussed before.

The second assignment of error is sustained.

Third Assignment of Error

"The acting municipal court judge was not qualified and/or was biased against defendant Boehman."

The qualifications of municipal court judges are set out in R.C. 1901.06:

"A municipal judge during his term of office shall be a qualified elector and a resident of the territory of the court to which he is elected or appointed. A municipal judge shall have been admitted to the practice of law in this state and shall have been, for a total of at least six years preceding his appointment or the

commencement of his term, engaged in the practice of law in this state or served as a judge of a court of record in any jurisdiction in the United States, or both."

R.C. 1901.10(A)(2) provides that the elected judge of a single-judge municipal court may appoint a substitute who is otherwise qualified pursuant to R.C. 1901.06 to hold the position of acting judge during the temporary absence of the municipal judge.

The Xenia Municipal Court is a single-judge municipal court. On the date of Boehman's trial, attorney David Cox of Xenia was apparently appointed acting judge of that court. Boehman has not demonstrated how attorney Cox was not qualified for that position. Even if he was not, that issue is not open to collateral attack in this proceeding. *Leach v. Dixon* (1990), 66 Ohio App.3d 757, 586 N.E.2d 180.

Finally, as to the impartiality of the acting judge, Boehman has failed to demonstrate how his rulings were motived by that form of defect. Perhaps Boehman's unfamiliarity with trial procedure produced exasperated reactions from the court in the course of the trial. However, we cannot find that the verdict against Boehman resulted from a lack of impartiality on the part of the acting judge.

The third assignment of error is overruled.

Having sustained the first and second assignments of error, we will reverse Boehman's conviction and remand for further proceedings.

*Judgment reversed*
*and cause remanded.*

BROGAN, P.J., and FAIN, J., concur.