OPINION
Defendant-appellant Patricia Walton appeals from the May 18, 1998, Decision and Journal Entry of the Lancaster Municipal Court overruling her Motion to Suppress and the final Entry entered by such court on June 17, 1998.
 STATEMENT OF THE FACTS AND CASE
On November 28, 1997, at approximately 1:21 A.M. Trooper Tito Duran, who is with the State Highway Patrol, made a traffic stop of appellant's vehicle for speeding. Duran, who was in uniform, was driving a cruiser at the time. Using a K-55 radar, Trooper Duran had clocked appellant's vehicle as traveling at the rate of 68 miles per hour in a 55 miles per hour zone. After stopping appellant, Trooper Duran noticed a moderate odor of alcohol emanating from appellant and her vehicle. For such reason, after having appellant exit her vehicle, he performed a horizontal gaze nystagmus check on appellant's eyes and asked appellant to perform field sobriety tests to determine if she was driving while impaired. Based upon the results of the horizontal gaze nystagmus and the field sobriety tests, which he believed were consistent with those of someone under the influence of alcohol, and the fact that appellant, once in the police cruiser, smelled of alcohol, Trooper Duran arrested appellant for driving under the influence of alcohol. Following her arrest, appellant was taken to the State Highway Patrol post where she submitted to a chemical breath test that was performed using a BAC Datamaster. Appellant's test yielded a result of .105 grams of alcohol per 210 liters of breath. Thereafter, appellant was charged with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1), operating a motor vehicle while having a prohibited alcohol level in violation of 4511.19(A)(3) and operating a motor vehicle over the posted speed limit, in violation of R.C. 4511.21(D). On December 30, 1997, appellant filed a Motion to Suppress the results of her breath test alleging, in the third branch of her motion, that "[t]he instrument check solution used to check the breath machine is inherently untrustworthy and incapable of being verified by the Ohio Department of Health and, therefore, the Director of the Ohio Department of Health has abused his discretion in approving the instrument check solution . . ." Appellant, in branches 1, 2 and 4 of her Motion to Suppress, also argued: (1) that Trooper Duran's stop of her was illegal, (2) that certain Ohio Department of Health regulations regarding breath testing were not substantially complied with, and (4) that she was not advised of her Miranda rights before oral and written statements were obtained from her by the police. An oral hearing on branches 1, 2 and 4 of appellant's Motion to Suppress was held on March 23, 1998. At the conclusion of the hearing, the trial court took the matter under consideration. On April 27, 1998, an oral hearing on the third branch of appellant's Motion to Suppress was held. For the purposes of the April 27, 1998, hearing only, appellant's case was consolidated with 98-TRC-186, State of Ohio v. Marcus Riders. Pursuant to a Decision and Journal Entry filed on May 18, 1998, the trial court overruled appellant's Motion to Suppress with regard to branch 3 of such motion, holding that "since the breath machines used to test [both appellant and Rider] were checked by an instrument check solution which was reliable and supported by sound scientific principles, the Director of the Ohio Department of Health has not abused his discretion in affirming the previously approved instrument check solution." No decision was filed either granting or denying the other three branches of appellant's motion. A bench trial before Judge Don S. McAuliffe was held on June 17, 1998. Prior to the start of the testimony, appellant's counsel moved, pursuant to R.C. 2941.32, for an order requiring the prosecution to elect whether to proceed under 4511.19(A)(1) or 4511.19(A)(3). The trial court denied appellant's oral motion. At the conclusion of the trial, the trial court found appellant not guilty of violating R.C.4511.19(A)(1), operating a motor vehicle while under the influence of alcohol, but guilty of violating both 4511.21(D), exceeding the speed limits, and 4511.19(A)(3), operating a motor vehicle with a prohibited alcohol level. With respect to the speeding offense, appellant was fined $25.00 while, with respect to the driving under the influence offense, appellant was fined $350.00, ordered to pay court costs and sentenced to ten days in jail. The trial court, however, suspended seven days of appellant's sentence and stated that it would credit her with three days attendance at a residential alcohol program. In addition, appellant's driver's license was suspended for 180 days. A sentencing entry was filed on June 17, 1998. It is from the May 18, 1998, and June 17, 1998, Entries that appellant prosecutes her appeal, raising the following assignments of error:
 1. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO RULE ON BRANCHES 1, 2, AND 4 OF DEFENDANT'S MOTION TO SUPPRESS.
 2. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN OVERRULING BRANCH 3 OF DEFENDANT'S MOTION TO SUPPRESS.
 3. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN OVERRULING DEFENDANT'S MOTION TO ORDER THE STATE TO ELECT BETWEEN THE R.C. SECTION 4511.19(A)(1) CHARGE AND R.C. 4511.19(A)(3) CHARGE.
 4. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN OVERRULING DEFENDANT'S MOTION FOR ACQUITTAL ON THE R.C. SECTION 4511.19(A)(3) CHARGE.
 5. THE TRIAL COURT FINDING THAT DEFENDANT WAS GUILTY OF VIOLATING R.C. SECTION 4511.19(A)(3) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 6. THE TRIAL COURT FINDING THAT DEFENDANT WAS GUILTY OF VIOLATING R.C. 4511.21(D) WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 I
Appellant, in her first assignment of error, contends that the trial court's failure to rule on branches 1, 2 and 4 of appellant's Motion to Suppress after the March 23, 1998, oral hearing constituted prejudicial error since "a ruling in [appellant's] favor could have resulted in the dismissal of all charges and/or suppression of material evidence." At the conclusion of the March 23, 1998, hearing, the trial court took the matter under consideration. Appellant is correct in her assertion that the trial court failed to journalize its decision on branches 1, 2, and 4 of her Motion to Suppress. However, "the fundamental rule is that an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected." Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 210. Had the trial court's failure to rule on branches 1, 2, and 4 of the appellant's Motion to Suppress been brought to the trial court's attention, the trial court could have issued a ruling as to such branches. Moreover, when a trial court fails to rule upon a motion, an appellate court generally will presume the trial court overruled the motion. Akbar-el v. Mohammend (1995), 105, Ohio App. 3d 81. In view of this presumption, we find the trial court did not err in failing to rule on branches 1, 2 and 4 of appellant's Motion to Suppress. Furthermore, presuming the trial court overruled branches 1, 2, and 4 of appellant's Motion to Suppress, we find that the trial court's ruling was proper. Appellant, in the first branch of her motion, alleged that Trooper Duran's stop of her was illegal. The trial court correctly overruled branch 1 of appellant's motion since, based on the K-55 reading, Trooper Duran had probable cause to arrest appellant for speeding. The second branch of appellant's motion challenged the compliance with Ohio Department of Health regulations regarding breath testing machines. The State, at the March 23, 1998, suppression hearing, demonstrated that there was substantial compliance with Ohio Department of Health regulations regarding testing of BAC machines. Trooper Duran testified at the hearing that, in compliance with such regulations, the patrol post customarily checks the calibration of a breath machine every seven days and that the subject breath machine was checked on November 16, 1997 and then again on November 23, 1997, five days before appellant's arrest. See Transcript of March 23, 1998, hearing at 52-53. Duran further testified that the subject breath machine was again checked seven days later on November 30, 1997, which is after appellant's arrest. The State, in support of Trooper Duran's testimony, submitted records documenting the calibration of the machine. Defense counsel objected to the records only on grounds of hearsay since neither were the individuals who had prepared such records present at the hearing nor were the records authenticated by the records custodian or certified. See Transcript of March 23, 1998, hearing at 60. The trial court, however, admitted the records over appellant's objection, finding that they were kept in the regular course of business. Thus, the trial court properly overruled branch two of appellant's Motion to Suppress. Appellant, in branch 4 of her Motion to Suppress, argued that she was not advised of her Miranda rights before oral and written statements were obtained from her by the police. However, since no oral or written statements were obtained from appellant nor admitted at trial, the trial court did not err in overruling branch 4 of appellant's motion. Appellant's first assignment of error is denied.
 II
In her second assignment of error, appellant argues that the trial court committed prejudicial error in overruling branch 3 of her Motion to Suppress. Appellant was charged with violating R.C.4511.19(A)(1) and (A)(3) after submitting to a BAC Datamaster and testing .105. Appellant specifically challenges the trial court's finding that the instrument check solution, batch number 97220, used to check the calibration of the breath testing machine in appellant's case, is reliable and has been subjected to scientific verification by the Ohio Department of Health. Pursuant to R.C. 3701.143, the director of health shall determine, or cause to be determined, the techniques or methods for "chemically analyzing a person's blood, urine, breath, or other bodily substance in order to ascertain the amount of alcohol . . . in the person's blood, urine, breath, or other bodily substance." R.C. 3701.143 further provides that the director of health "shall approve satisfactory techniques or methods." To accomplish this task, the Department of Health has established a protocol under Ohio Administrative Code Chapter 3701. Ohio Adm. Code 3701-53-04(A) states that an instrument check on approved evidential breath testing instruments shall be performed no less than once every seven days using an instrument check solution containing ethyl alcohol approved by the director of health. Such section further provides that an instrument check solution is valid when the result is at or within five one-thousandths (0.005) grams per two hundred ten liters of the target value for that instrument check solution. While the Department of Health has authority to determine the techniques and methods for testing blood, urine, breath or other bodily substances, the Ohio Department of Health may not abuse its discretion in doing so. See State v. Sebach (1998), Knox App. No. 97 CA 24, unreported. An abuse of discretion has been defined as an unreasonable, arbitrary or unconscionable act. Blakemore v Blakemore (1983), 5 Ohio St.3d 217. At the April 27, 1998, hearing, Dr. Craig Sutheimer, a Deputy Director at the Ohio Department of Health and Chief of the Alcohol Testing Program, testified that instrument check solution batch number 97220 is manufactured by Steifel Research and sold under a Guth Laboratories label. When the Ohio Department of Health purchases a solution such as batch number 97220 for use in a breathalyzer machine, it receives an affidavit from the manufacturer indicating the amount of alcohol in the solution (the "target value"). Thereafter, the Ohio Department of Health independently tests four sample bottles out of the batch four times each, for a total of sixteen tests, to confirm the accuracy of the target value that the manufacturer assigns to the solution. The testing performed by the Department of Health is not itself used to establish a target value. If the target value is found to be accurate, the Ohio Department of Health certifies the solution. Batch number 97220, which contained 1,800 bottles, was certified at Dr. Sutheimer's recommendation by the Ohio Department of Health on September 30, 1997, despite the fact that Dr. Sutheimer's repeated inquiries to Steifel Research for documentation as to the quality control used in establishing the target value and as to the number of tests run went unanswered. At such point in time, Dr. Sutheimer also had been unable to get into visit Steifel Research. After visiting Steifel Research on November 21, 1997, Dr. Sutheimer discovered that Steifel Research had only analyzed three bottles out of batch number 97220 and had sent two additional bottles out to Adirondack Lab for testing prior to providing the Ohio Department of Health with an affidavit assigning the target value. At the April 27, 1998, hearing, Dr. Sutheimer testified to a reasonable degree of scientific certainty that at the time the solution certificate was issued by the Ohio Department of Health on September 30, 1997, "[n]either the manufacturer nor the Department of Health had analyzed enough bottles to set a true target for batch number 97220." Transcript of Proceedings at 55. For batch number 97220, a minimum of six to eight bottles should have been tested by one entity, namely Steifel, to set a true target value. See Transcript of April 27, 1998, hearing at 82-84. For such reason, during the first week of December of 1997, Steifel tested ten additional unopened bottles of batch 97220 which had been sent to it by the Ohio Department of Health for analysis. Dr. Sutheimer, however, admitted that the ten bottles did not represent a perfect random selection since he gave Steifel every bottle that he had on hand. A perfect random selection would have been done prior to the entire batch of 1,800 bottles being released. However, Dr. Sutheimer did state that the ten bottles sent were "random in nature." They were the last ten bottles left in the batch and were bottle numbers 217, 233, 344, 498, 740, 749, 1,034, 1,073, 1,801, and 1,815. (Transcript at Pages 73 and 74). Dr. Sutheimer, who personally went to Steifel Labs to review the raw data of the further testing that was performed in December of 1997, testified that "it is the testing done in December that makes me feel comfortable as to what the true target value is". Transcript at 70. He was, however, not present for such testing. Based on the testing performed in December of 1997, we find that the instrument check solution batch number 97220 is reliable. The Ohio Department of Health did abuse its discretion in approving batch number 97220 on September 30, 1997, when it certified the solution and blindly accepted Steifel's target value for the batch. However, the subsequent testing done on batch number 97220 in December, 1997, was based on sound scientific procedure and the target value set through that December, 1997, testing was the same target value originally set through the earlier insufficient testing, and was the same target value certified by the Director of the Ohio Department of Health on September 30, 1997. We agree with our colleagues from the Third District Court of Appeals when they found that the solution of ethyl alcohol from batch number 97220 was reliable since it was confirmed through subsequent scientific testing that that batch contained the amount of ethyl alcohol previously certified by the Director of Health. State v. Miller unreported, Court of Appeals of Ohio, Third District, Marion County, Dec. 15, 1998, No. 9-98-42. Appellant's second assignment of error is overruled.
 III
In her third assignment of error, appellant asserts that the trial court committed prejudicial error in overruling her motion to order the State to elect between the R.C. 4511.19(A)(1) charge, driving under the influence of alcohol, and the R.C.4511.19(A)(3) charge, driving with a prohibited alcohol level. While the trial court overruled appellant's motion, it held that appellant could only be convicted and sentenced for one offense. Appellant specifically points to R.C. 2941.32 which provides as follows: "[i]f two or more indictments or informations are pending against the same defendant for the same criminal act, the prosecuting attorney must elect upon which he will proceed, and upon trial being had upon one of them, the remaining indictments or information shall be quashed." However, R.C. 4511.19(A)(1)and (3) have been held to create separate offenses. State v. Mendieta (1984), 20 Ohio App.3d 18. See also State v. Wilcox (1983),10 Ohio App.3d 11. A defendant, therefore, may be charged with both and found guilty of both, but may only be sentenced as to one. Id. Since appellant was not sentenced on both charges, the trial court did not err in overruling appellant's motion and allowing the State to pursue both charges. Appellant's third assignment of error is denied.
 IV, V
In her fourth assignment of error, appellant argues that the trial court committed prejudicial error in overruling her motion for acquittal on the R.C. 4511.19(A)(3) charge, operating a motor vehicle with a prohibited alcohol level. Appellant had moved for acquittal at the conclusion of the State's case pursuant to Criminal Rule 29 since the State did not correlate the results of appellant's blood alcohol test, which was taken within two hours of the alleged offense as mandated by R.C.4511.19(D)(1), to her blood alcohol level at the time of appellant's operation of the motor vehicle. Appellant's blood alcohol test, which was taken approximately 53 minutes after the operation of a motor vehicle, indicated a blood alcohol level of .105 grams of alcohol per 210 liters of breath. R.C.4511.19(D)(1) states as follows: "In any criminal prosecution or juvenile court proceeding for a violation of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine, the court may admit evidence on the concentration of alcohol, drugs of abuse, or alcohol and drugs of abuse in the defendant's blood, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of the alleged violation." (Emphasis added)
As the Sixth District Court of Appeals stated in State v. Ulrich (1984), 17 Ohio App.3d 182, 191:
 "Clearly, it is the intent of the Ohio Legislature in prosecutions under R.C. 4511.19(A)(3) to have admitted, as evidence of the alleged offender's concentration of alcohol in the alleged offender's breath at the time of the alleged offense, a chemical analysis of the alleged offender's breath provided that the breath sample was withdrawn according to established guidelines. It is a legislative determination that a breath sample withdrawn within two hours of the alleged offense will accurately reflect the alleged offender's alcohol content, by weight, in the withdrawn breath sample at the time of the alleged offense. Thus, the amount of alcohol concentration in the alleged offender's breath at the time of the alleged offense is shown by a chemical analysis of a sample of the alleged offender's breath which is withdrawn within two hours of the time of the alleged violation."
Since appellant's breath sample was taken within two hours of the alleged violation, the trial court correctly determined that it accurately reflected appellant's blood alcohol content at the time of the offense. The trial court, therefore, did not err in overruling appellant's Motion for Acquittal on the R.C.4511.19(A)(3) charge. Similarly, in her fifth assignment of error, appellant contends that the trial court's finding that appellant was guilty of violating R.C. 4511.19(A)(3), operation of a motor vehicle with a prohibited level of alcohol, was against the manifest weight of the evidence. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. Appellant specifically asserts that the trial court's finding that appellant was guilty of violating 4511.19(A)(3) was against the manifest weight of the evidence since the State did not correlate appellant's "chemical test reflecting blood alcohol level to the time of the alleged operation of the motor vehicle in rebuttal to expert testimony . . . that, at the time of [the] alleged operation of a motor vehicle, a defendant's blood alcohol level was under the legal limit." At appellant's trial, Dr. Alfred Staubus, appellant's expert witness, testified that at the time appellant last operated the motor vehicle, it is possible to a reasonable degree of medical certainty that her blood alcohol concentration was less than .100. Dr. Staubus further testified that, assuming the State's chemical test was accurate, appellant's alcohol level could have been as low as .087 or as high as .123, and that any stomach acid in her mouth due to regurgitation could have affected the outcome of her blood alcohol concentration test. However, "expert testimony is not necessary to correlate intoxilyzer test results to the time of the alleged offense." Ulrich, supra at 191. Rather, a defendant "may challenge the accuracy of his specific test result through the use of expert testimony, to show that he could not have produced the test result claimed by the prosecution under those circumstances." City of Columbus v. Day (1985), 24 Ohio App.3d 173, syllabus. The testimony of Dr. Staubus was presented by appellant for such purpose. The State, however, was not required to rebut Dr. Staubus' testimony by presenting expert testimony correlating appellant's test results to the time of the alleged offense since, as is stated above, a breath sample withdrawn within two hours of the alleged offense has been legislatively determined to accurately reflect the alleged offender's alcohol content at the time of the alleged offense. Upon consideration of the record, this court cannot say that the trial judge, as trier of fact, clearly lost his way and created a manifest miscarriage of justice. Appellant's fourth and fifth assignments of error are overruled.
 VI
In her final assignment of error, appellant challenges the trial court's finding that appellant was guilty of violating R.C.4511.21(D), exceeding the speed limit, contending that such finding was not supported by sufficient evidence. Appellant specifically asserts that there was insufficient evidence to support her conviction since no expert testimony was offered by the State nor did the court take judicial notice of the scientific foundation and reliability of the K55 radar. Courts have taken judicial notice of the reliability of radar units. See City of East Cleveland v. Ferell (1958), 168 Ohio St. 298 and City of Xenia v. Boehman (1996), 114 Ohio App.3d 78. The Ohio Supreme Court, in Ferell, specifically stated as follows: "We are in accord with the trend of the most recent decisions that readings of a radar speed meter may be accepted in evidence, just as we accept photographs, x-rays, electroencephalographs, speedometer readings, and the like, without the necessity of offering expert testimony as to the scientific principles underlying them." Id. at 303. In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus.
When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction for violating R.C.4511.21(D) was based upon insufficient evidence. The prosecution, to sustain a conviction based on evidence obtained from radar, must prove that the radar device "was properly set up and tested by a technician trained by experience to do so, and that at the time it was functioning properly. . .". East Cleveland v. Ferell (1958), 168 Ohio St. 298, syllabus. At the March 23, 1998, hearing on appellant's Motion to Suppress and at appellant's trial, Trooper Duran, who has a certificate from the Department of Health authorizing him to perform breath tests using a BAC Datamaster, also testified as to his training and certification to operate the K55 radar unit. Trooper Duran laid the foundation for the admission of the results of the K55 radar by testifying in detail as to how the radar unit was calibrated both prior to and after appellant's arrest and by testifying as to his certification and experience in the use of the same. Trooper Duran testified that he checked to verify that his machine was working properly both before and after his shift on November 28, 1997, and that based on his training and experience, his machine was working properly when he clocked appellant's vehicle. The record clearly indicates that Duran laid a foundation for the trial court considering him as an expert. See State v. Woods (April 15, 1993), Stark App. No. CA-9115, unreported. The court finds, therefore, that the trial court's finding that appellant was guilty of violating R.C. 4511.21(D) was supported by sufficient evidence. Appellant's sixth assignment of error is denied.
The judgment of the Lancaster Municipal Court is affirmed.
By Edwards, J. Wise, P. J. and Farmer, J. concur