OPINION
Defendant-appellant, Jeffrey S. Lloyd, appeals from the decision of the Southwest Area County Court of Columbiana County finding him guilty of exceeding the speed limit and fining him $100.
On May 28, 2001, Trooper Craig Monte (Trooper Monte) stopped appellant's vehicle on Ohio State Route 7 for speeding. Trooper Monte issued appellant a traffic ticket that stated he clocked appellant with his laser traveling at sixty-six miles per hour in a fifty-five miles per hour zone. Appellant pled not guilty. The court scheduled a trial for June 27, 2001.
Appellant, acting pro se, filed a request for discovery seeking, among other things, a witness list, a log of the laser speed detection device used to determine his speed, the arresting officer's training certificates, an overview and description of the State of Ohio's curriculum for the training and certification for officers for the use of laser speed detection devices, and how and where the laser speed detection device was calibrated. Plaintiff-appellee, the State of Ohio, provided some of the requested information to appellant on June 22, 2001. On June 25, 2001, appellant filed a motion to compel discovery of the remaining information. Appellant also filed a motion for a continuance of the trial scheduled for June 27, 2001 because he had not yet received all of his requested discovery. On June 26, 2001, appellant filed a motion to dismiss the case alleging appellee's actions interfered with his right to a speedy trial. The trial court held a hearing on appellant's motions on June 27, 2001. It overruled appellant's motion to dismiss, granted appellant's motion for a continuance, and ordered appellee to complete any discovery within seven days.
A trial was held on July 27, 2001. Appellant appeared pro se. The trial court found appellant guilty of exceeding the speed limit in violation of R.C. 4511.21(D) and fined him $100 plus costs, which it journalized in its July 30, 2001 judgment entry. Appellant filed a timely notice of appeal on August 2, 2001. The trial court stayed appellant's fine pending this appeal.
Appellant is now represented by counsel. He raises eight assignments of error, the first of which states:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING DEFENDANT-APPELLANT'S OHIO CRIMINAL RULE 16 MOTION TO COMPEL DISCOVERY ON SEVERAL KEY ISSUES, THEREBY ABUSING ITS DISCRETION MATERIALLY COMPROMISING DEFENDANT'S ABILITY TO PROPERLY DEFEND HIMSELF."
Appellant complained in his motion to compel that appellee failed to supply him with nineteen of his discovery requests. Of the nineteen items requested, the trial court ordered appellee to supply appellant with one of them, that being any damage history to the laser device. It ruled the other items appellant requested were either irrelevant or undiscoverable. Appellant now argues that the trial court erred in disallowing discovery on several of his requests.
The granting or overruling of discovery motions in a criminal case rests within the sound discretion of the trial court and will only be disturbed on appeal in cases of clear abuse of discretion. State v.Shoop (1993), 87 Ohio App.3d 462, 469. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was arbitrary, unreasonable or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157.
"`The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party.'" State v. Smith (Aug. 10, 2001), 11th Dist. No. 2000-A-52, 2001 WL 901016 at *4, quotingLakewood v. Papadelis (1987), 32 Ohio St.3d 1, 3. "The overall purpose of the discovery rules is to produce a fair trial." Id., citing State v.Mitchell (1975), 47 Ohio App.2d 61, 80.
First, appellant alleges the court erred in not requiring appellee to submit to him the name and address of its expert witness. In its initial response to discovery appellee stated it intended to call a laser expert witness from LPI Manufacturers, the company that made the laser, but that the exact name and address of the expert was unknown at that time. The trial court stated appellee would only be required to provide appellant with the expert's name. Crim.R. 16(B)(1)(e) provides that "[u]pon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial."
At the time appellee filed its discovery response it did not yet know who its expert witness would be. However, on July 20, 2001, appellee filed the resume of its expert witness with the court, which included the expert witness's name and address. Appellant states, and there is nothing on the record to the contrary, that appellee never served him with a copy of the expert's name, address, or resume. No certificate of service accompanies the expert's resume that appellee filed with the court. Therefore, we can presume appellee did not serve a copy of its expert's resume with appellant. Without the name and address of appellee's expert, appellant was denied the opportunity to review the expert's credentials before trial and had no one to whom to address interrogatories. Thus, the trial court erred in not ordering appellee to provide appellant with its expert's address. Furthermore, appellee failed to provide appellant with even its expert's name.
Second, appellant argues the court erred by denying his request for an overview and description of the State of Ohio's curriculum regarding the education and certification of officers for the use of laser speed devices; hourly, classroom, and field training requirements; and continuing education thereof. Appellee stated at the motion hearing this information was irrelevant because it had already provided appellant with a copy of Trooper Monte's certification in the use of the laser, therefore indicating that he had completed all training necessary to become certified. The court agreed with appellee.
At trial, Trooper Monte testified regarding the training he underwent to become certified in the use of electronic speed measuring devices and in visually estimating the speed of vehicles. Trooper Monte testified that while in the police academy he had one week designated as radar and laser week. He stated that this week consisted of five normal workdays. He testified that this week also included training on the visual estimation of the speed of oncoming traffic. Appellee also introduced into evidence Trooper Monte's "Officer's Certificate of Training," which stated he satisfactorily completed all course requirements in theory, technical aspects, and practical use of electronic speed measuring devices.
Although appellant did not have the information about Trooper Monte's training in the use of laser devices before trial, this did not prejudice him. Appellee gave Trooper Monte's certificate of training to appellant in discovery; thus, appellant knew Trooper Monte was certified. The other information Trooper Monte testified to regarding the training week was not essential to appellee's case nor did it help or hurt appellant's case.
Third, appellant argues the court erred in denying his discovery request for the time the laser device was calibrated and tested for the day of his citation and for the date it was submitted for factory testing and calibration. At the motion hearing, the court held appellee did not have to provide appellant with this requested information because appellant could question Trooper Monte about these issues at trial. However, appellee did provide appellant with the certificate of calibration from Laser Technology, Inc. in its response to discovery, which verified that the laser device in question was calibrated on June 30, 1994.
At trial, Trooper Monte testified the laser device in question was last calibrated at the factory on June 30, 1994 and introduced the certificate of calibration confirming the calibration date. (State's Exhibit 2). Trooper Monte also testified he calibrated the laser device at the beginning of his shift the day he issued appellant the speeding citation. Nothing in the record indicates appellant was prejudiced by lack of discovery concerning when Trooper Monte calibrated the laser.
Finally, appellant argues appellee failed to comply with the court's order that it provide additional discovery to him within seven days of the June 27, 2001 hearing. He claims that he was prejudiced by appellee's delay of fifteen days.
Appellant failed to object to appellee's delay in filing the court ordered discovery until appellee rested its case. At that time, appellant requested a continuance based on appellee's delay in providing him with the requested discovery. The trial court overruled appellant's request stating he should have raised it at the beginning of trial. Since appellant did not bring to the court's attention appellee's delay in completing discovery until appellee rested its case, the court did not err in denying appellant's request for a continuance.
Since the trial court failed to order appellee to provide appellant with its expert's address or resume and because appellee failed to provide appellant with any information whatsoever about the expert it intended to call, the trial court abused its discretion and impeded the purpose of the discovery rules. Accordingly, appellant's first assignment of error has merit.
Appellant's second assignment of error states:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND ABUSED ITS DISCRETION BY DENYING DEFENDANT THE RIGHT TO CROSS EXAMINE THE STATE'S WITNESSES WITH QUESTIONS DESIGNED TO IMPEACH THEIR TESTIMONY AND TO REBUT EVIDENCE AS TO THE OPERATING INTEGRITY OF THE LASER SPEED DETECTION DEVICE USED BY THE ARRESTING OFFICER TO DETERMINE DEFENDANT'S SPEED."
Appellant alleges that had the trial court permitted him to cross-examine the witnesses as he wished, he could have established the laser device must be operated in strict accordance with the operating manual, that it contains design flaws that render it incapable of providing accurate readings on all occasions, and that Trooper Monte was not qualified to measure speed. Appellant claims that the trial court improperly sustained appellee's objections to many of his questions on cross-examination of Trooper Monte. Appellant cites to Xenia v. Boehman
(1996), 114 Ohio App.3d 78, to support his argument in which the Second District Court of Appeals reversed the defendant's speeding conviction. The court found the trial court erred in not permitting the defendant to question the arresting officer regarding the circumstances of the defendant's traffic stop, the circumstances surrounding other tickets the officer had issued, and about what could cause false readings on a radar speed detection device. The court held the defendant, who was acting pro se, was attempting to impeach the officer's credibility and to determine his competency to use the radar device. Therefore, the court held the trial court abused its discretion in prohibiting these lines of questioning.
A trial court shall exercise reasonable control over the mode and order of interrogating witnesses. Evid.R. 611(A). The trial court shall allow cross-examination "on all relevant matters and matters affecting credibility." Evid.R. 611(B). The scope of cross-examination lies within the trial court's discretion. State v. Slagle (1992), 65 Ohio St.3d 597,605; State v. Acre (1983), 6 Ohio St.3d 140, 145. This court will not reverse a trial court's ruling on the scope of cross-examination absent an abuse of that discretion. Id.
Appellant alleges the court erred in disallowing him to ask certain questions of Trooper Monte. Specifically, appellant calls our attention to the following excerpts from the trial transcript. Appellant asked Trooper Monte, "Do you find radar to be superior to laser? Or do you find laser to radar?" (Tr. 32). The trial court sustained appellee's objection on the basis of relevancy. Appellant also asked Trooper Monte, "at what range do you have to qualify for your service weapon?" (Tr. 34). Appellee again objected on the basis of relevancy. Appellant argued the relevancy was Trooper Monte's aiming. The court sustained the objection. Next, appellant asked Trooper Monte a line of questions regarding whether the laser device would work if it was damaged and whether excessive voltage could have damaged the laser device. Trooper Monte testified he did not know about the voltage of the laser. The court then sustained an objection to appellant's question regarding whether Trooper Monte had had enough faith in the laser device to subject it to an extreme voltage test. Finally, appellant asked Trooper Monte if he was able to visually measure the speed of an aircraft at approximately thirteen hundred feet. Again, appellee objected and the court sustained the objection.
It is worth noting "[o]ne of the oldest and most fundamental rights in the Anglo-American system of evidence is the right of a party to cross-examine an adverse witness. The value of the right of cross-examination is well-settled in Ohio jurisprudence. `* * * The importance of the right of full cross-examination, of an adverse witness, can scarcely be overestimated. As a test of the accuracy, truthfulness, and credibility of testimony, it is invaluable.' (Emphasis added.) Martin v. Elden (1877), 32 Ohio St. 282, 287." Smith v.Mitchell (1988), 35 Ohio St.3d 237, 239.
The trial court abused its discretion in not permitting appellant to pursue the above lines of questioning. As in Boehman, most of appellant's lines of questioning, although not artfully presented, sought responses that could potentially impeach Trooper Monte's credibility. When appellant asked Trooper Monte whether he thought laser to be superior to radar, he was attempting to determine whether there may have been a more accurate way for Trooper Monte to determine his speed. When appellant asked Trooper Monte about his range for firing weapons, he was trying to establish that it would be difficult to aim and fire a laser at a car license plate that was a far distance away. When he asked Trooper Monte if he could visually measure the speed of an aircraft at thirteen hundred feet, he was attempting to establish that when Trooper Monte visually estimated his speed (while he was approximately thirteen hundred feet from appellant) it would be difficult for him to do so accurately.
The only line of questioning the court properly sustained appellee's objection to was regarding design flaws dealing with voltage. Trooper Monte testified he did not know about the voltage issues concerning the laser device. Thus, the court did not allow further questions on the issue. Also, appellant was able to question appellee's laser expert about potential design flaws dealing with voltage.
Thus, appellant's second assignment of error has merit.
Appellant's third assignment of error states:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND ABUSED ITS DISCRETION BY RELYING SOLELY ON THE TESTIMONY OF THE STATE'S WITNESSES, ABSENT ADMISSION INTO EVIDENCE OF THE LTI MARKSMAN 20-20 LASER SPEED DETECTION DEVICE."
Appellant contends the trial court should not have relied on the testimony of appellee's witnesses regarding the laser device since appellee did not introduce the laser device into evidence. Appellee called Professor Wyatt Kilgallin (Prof. Kilgallin) as a laser expert. Appellant claims the court drew conclusions from Prof. Kilgallin's testimony that resulted in the court taking judicial notice of the laser device as an acceptable device to be used in this jurisdiction. Additionally, he argues appellee should have asked that the record reflect the specific reading derived from the laser device on the date in question.
Appellant fails to cite to any authority to support his contention that absent the admission of the laser into evidence, appellee's witnesses cannot be relied upon. Appellant also fails to point to any conclusion the trial court reached regarding the laser device that was improper. Finally, as to the record reflecting the reading from the laser on the day in question, Trooper Monte testified that when he used the laser to determine appellant's speed, the laser indicated sixty-six miles per hour.
Accordingly, appellant's third assignment of error is without merit.
Appellant's fourth assignment of error states:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND ABUSED ITS DISCRETION BY ADMITTING THE STATE'S WRITTEN HEARSAY EVIDENCE, DESPITE RENEWED DEFENSE OBJECTIONS."
The trial court admitted a written study entitled, "Analysis of Laser Speed Measurement Data" (New Jersey study) into evidence. The study was conducted by the New Jersey Department of Transportation and was dated January 28, 1997. The New Jersey study was designed to evaluate the accuracy and precision of the LTI Marksman 20-20 Laser Speed Detection System. The study compared the laser device in question with other speed measurement devices. Prof. Kilgallin used the New Jersey study to supplement his testimony. Appellant objected to the introduction of the New Jersey study and Prof. Kilgallin's testimony regarding it as hearsay because appellee did not produce the facts/data that the study was based on. The trial court overruled the objection but noted it would "take it for the weight that should be given to it." (Tr. 72).
Appellant argues the court improperly admitted this study into evidence because it draws conclusions from data gathered by someone who did not testify at trial.
"Although evidentiary rulings are typically reviewed only for abuse of the trial court's discretion, `[e]rrors relating to the trial court's admission of hearsay must be viewed in the light of Evid.R. 103(A) and the standard established in Crim.R. 52(A), providing that such errors are harmless unless the record demonstrates that the errors affected a party's substantial right.'" Safkow v. Scheiben, 7th Dist. No. 99-CO-79, 2001 Ohio 3255, 2001 WL 503200 at *3, quoting State v. Sorrels (1991),71 Ohio App.3d 162, 165. Evid.R. 103(A) provides that a party must object to the contested evidence in a timely manner to preserve the issue for appeal.
Hearsay is an out of court statement offered in court to prove the truth of the matter asserted. Evid.R. 801(C). The New Jersey study meets this definition. Evid.R. 702(C) provides that an expert witness may give his opinion if it, among other things, "is based on reliable scientific, technical, or other specialized information." If the expert's testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if it meets three requirements. Id. The requirements are:
 "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 "(2) The design of the procedure, test, or experiment reliably implements the theory;
 "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result." Id.
Prof. Kilgallin's testimony concerning the New Jersey study does not meet these requirements. Prof. Kilgallin did not testify as to the reliability of the design of the study nor did he testify that the experiments were performed in such a way as to yield an accurate result. Since the study was hearsay and Prof. Kilgallin failed to testify regarding its reliability, the trial court should not have admitted it into evidence.
However, it does not appear that by admitting the study into evidence the court prejudiced appellant. The court noted it would only consider the study for the weight that should be given to it. Furthermore, appellant cross-examined Prof. Kilgallin about the study. Prof. Kilgallin admitted he was not there when the study was conducted. Additionally, the majority of Prof. Kilgallin's expert testimony did not concern the New Jersey study, but instead concentrated on his own personal knowledge of the laser device. Finally, there is no indication that the court specifically relied on the study in rendering its decision.
Therefore, although the trial court should not have admitted the New Jersey study, its error was harmless. Thus, appellant's fourth assignment of error is without merit.
Appellant's fifth assignment of error states:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY TAKING JUDICIAL NOTICE OF THE LASER SPEED DETECTION DEVICE BEFORE DEFENDANT COULD FULLY DEVELOP HIS CASE, AND ABSENT THE LASER'S ADMISSION INTO EVIDENCE."
Appellant argues the trial court erred in taking judicial notice of the laser device at the time when appellee objected to appellant's cross-examination of Prof. Kilgallin.
At trial, appellant objected to the court taking judicial notice of the fact that the LTI Marksman 20-20 laser device was reliable and accurate for determining speed; however, he did so after the court had already taken judicial notice of this fact. Even if appellant had objected to the judicial notice sooner, it was still proper for the court to take judicial notice.
"[T]he scientific accuracy of a laser device is the type of fact that can be judicially noticed." Columbus v. Dawson (Mar. 14, 2000), 10th Dist. No. 99AP-589, 2000 WL 271766 at *2. It is mandatory for a court to take judicial notice if requested by a party and supplied with the necessary information. Evid.R. 201(D). Judicial notice may be taken at any time during the proceedings. Evid.R. 201(F). "A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." Evid.R. 201(E).
According to the above rules of evidence, appellant was entitled to an opportunity to be heard as to the propriety of the court taking judicial notice of the accuracy and reliability of the LTI Marksman 20-20 laser device. The trial court did afford appellant this opportunity. After appellee concluded its direct examination of Prof. Kilgallin, it asked the court to take judicial notice of the fact that the LTI Marksman 20-20 laser device is an accurate device to determine the speed of a vehicle. The court stated it would first permit appellant to question Prof. Kilgallin and then appellee could renew its motion. Additionally, appellee supplied the court via Prof. Kilgallin's testimony with the information necessary and requested that the court take judicial notice of the laser device's accuracy. Hence, the court was obligated to take judicial notice as requested. Evid.R. 201(D).
Thus, appellant's fifth assignment of error is without merit.
Appellant's sixth assignment of error states:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY RELYING ON TESTIMONY AND CITING THE VIDEO TAPE THE TROOPER ALLEGEDLY MADE, EVEN THOUGH SAID VIDEO TAPE WAS NEVER ADMITTED INTO EVIDENCE."
A police cruiser videotape was made of Trooper Monte's traffic stop of appellant. Appellee never entered this tape into evidence; however, appellee did play the tape for the court. Appellant argues that the court erred in hearing testimony about what was on the videotape.
Appellant did not object to the playing of the videotape. The failure to object to an alleged error at trial waives all but plain error. Statev. Lindsey (2000), 87 Ohio St.3d 479, 482. Thus, we will reverse only if the outcome of the trial clearly would have been different absent the error. Id.
There is no indication that the outcome of the trial clearly would have been different had the court not listened to testimony about the videotape. In the tape, appellant makes a comment to Trooper Monte after Trooper Monte tells appellant that he clocked him traveling at sixty-six miles per hour. Trooper Monte testified that appellant replied, "I don't doubt that." (Tr. 9). Trooper Monte later testified it was possible appellant made this remark sarcastically. When the court announced its decision, it commented appellant's remark to Trooper Monte did not seem sarcastic. However, the court had before it other evidence of appellant's guilt in addition to this one comment. The court stated the following in its judgment entry. It found the LTI Marksman 20-20 laser device to be an accepted device for the measurement of speed in this jurisdiction. It found Trooper Monte properly operated the laser device and determined appellant was traveling at sixty-six miles per hour. The court also found the laser device was in proper working order. Therefore, the court did not need to rely on appellant's comment as evidence of his guilt.
Accordingly, the trial court did not commit plain error in watching the videotape or in listening to testimony of what occurred at the traffic stop. Thus, appellant's sixth assignment of error is without merit.
Appellant's seventh assignment of error states:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ISSUING A VERDICT BEFORE EITHER PLAINTIFF OR DEFENDANT RESTED THEIR CASE."
Appellant alleges that since he was a pro se defendant and because neither party formally announced that it had rested its case, the court should have inquired if each party rested before rendering its judgment. Appellant claims, absent that type of supervision by the court, he could have missed opportunities to move for a directed verdict, which compromised his ability to defend himself.
Although neither party explicitly stated, "I rest my case," it is obvious when reading the transcript that each party rested before the court entered its decision. The following excerpts from the transcript are applicable.
 "THE COURT: * * *. Does the State have any further evidence to present?
"MS. PETRELLA: The State does not, Your Honor.
 "THEREUPON, THE PLAINTIFF, THE STATE OF OHIO, RESTED ITS CASE IN CHIEF." (Tr. 134-35).
 "THE COURT: * * *. You have no other witnesses to present, Mr. Lloyd?
"MR LLOYD: No, Your Honor.
"THE COURT: All right.
 "THEREUPON, THE DEFENDANT, JEFFREY S. LLOYD, RESTED HIS CASE." (Tr. 152).
Based on the above excerpts, the trial court did not prematurely render its decision. Furthermore, the trial court is not obligated to provide a pro se defendant legal advice as to how to present his defense. Clevelandv. Lane (Dec. 9, 1999), 8th Dist. No. 75151, 1999 WL 1129582 at *3.
Thus, appellant's seventh assignment of error is without merit.
Appellant's eighth assignment of error states:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND ABUSED ITS DISCRETION BY FINDING DEFENDANT GUILTY ABSENT PROOF BEYOND A REASONABLE DOUBT THAT DEFENDANT WAS OPERATING A VEHICLE IN EXCESS OF THE POSTED SPEED LIMIT."
Appellant argues that he raised reasonable doubt as to whether he was actually speeding when Trooper Monte stopped him. Appellant relies on the case of State v. Saphire (Dec. 8, 2000), 2nd Dist. No. 2000 CA 39, 2000 WL 1803852, in which the Second District Court of Appeals reversed the defendant's conviction for speeding. At trial, the court took judicial notice of the accuracy and dependability of the laser device based solely on the court's training. The appellate court held that since no expert testimony was presented regarding the scientific reliability of the laser device, the trial court could not properly take judicial notice of its accuracy. Id. at *4. Since the trial court should not have admitted the reading from the laser device without expert testimony, the court held there was no admissible evidence that the defendant was traveling at the rate of speed alleged. Therefore, the court reversed the defendant's conviction. In the present case, appellant argues that he impeached Prof. Kilgallin's testimony; therefore, appellee could not use the reading from the laser device as evidence of his speed.
The case sub judice is distinguishable from Saphire. The trial court took judicial notice of the accuracy and dependability of the laser device based on Prof. Kilgallin's expert testimony. The court did not rely on its own training on laser devices as the trial court in Saphire
did. Even with appellant's attempted impeachment of Prof. Kilgallin, the trial court was in the best position to judge the credibility of Prof. Kilgallin's testimony. Judging the credibility of witnesses is primarily the responsibility of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 231.
Additionally, Trooper Monte testified that he observed appellant's vehicle traveling on State Route 7 at what he perceived as approximately sixty-five miles per hour. He then used his Marksman 20-20 laser to determine that appellant was actually traveling at sixty-six miles per hour. Trooper Monte testified that the posted speed limit on State Route 7 is fifty-five miles per hour.
As can be seen, the conviction in the trial court is based primarily on the testimony of Trooper Monte and Prof. Kilgallin. Given our findings in the first and second assignments of error that involve both Prof. Kilgallin and Trooper Monte, this eighth assignment of error is rendered moot.
Based on the merit of appellant's first and second assignments of error, the decision of the trial court is hereby reversed and remanded for further proceedings according to law and consistent with this opinion.
Vukovich, J., and DeGenaro, J., concur.