THE STATE OF OHIO, APPELLEE, *v.* WALKER, APPELLANT.

[Cite as State v. Walker (1978), 55 Ohio St. 2d 208.]

(No. 77-984—Decided July 26, 1978.)

210

*Mr. James R. Unger,* prosecuting attorney, and *Mr. Dale T. Evans,* for appellee.

*Messrs. Merkel, Campbell, Dill & Zetzer, Mr. Ernest P. Mansour, Mr. Eli Manos, Mr. David B. Cathcart* and *Mr. Stanley E. Tolliver,* for appellant.

*Per Curiam.*

### I.

Appellant, in his first proposition of law, essentially asserts that the evidence presented at trial did not attain the requisite degree of proof needed to support his conviction. Our consideration of this proposition is limited to an examination of the record at the trial to determine whether the evidence presented, "which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Atkins* v. *State* (1926), 115 Ohio St. 542, 546. This review is thus confined to a determination of whether there was substantial evidence. *State* v. *Sheppard* (1956), 165 Ohio St. 293, paragraph five of the

syllabus; *State* v. *Stewart* (1964), 176 Ohio St. 156, 160.

A review of the record reveals that appellee produced the testimony of two accomplices, Davidson and Ogeltree, as to appellant's participation in the crime. Ogeltree testified that he saw appellant shoot the decedent. The record also contains the in-trial identification of appellant as the decedent's murderer by Rene Clark, an uninterested eyewitness. Her in-court identification of appellant withstood a vigorous cross-examination by appellant's counsel. Furthermore, the decedent's wife, Mrs. Mack, testified that the appellant looked "very much like the man" who shot her husband. The testimony of Mrs. Hart, introduced by the appellee, corroborated the testimony of Davidson and Ogeltree with respect to their and appellant's fleeing the scene of the crime. Mrs. Hart, who lives in the proximity of the A & P food store, testified that on the morning of July 22, 1972, she observed two cars traverse the street where she lives at a very high rate of speed. Mrs. Hart stated that the first car was white and occupied by two males, and the second was a brown compact and was driven by a man with a rough complexion similar to the appellant's. Appellee also produced, in addition to the testimony of Davidson and Ogeltree, three other witnesses, who stated at trial that they had seen the appellant in Cleveland and free of custody during the period the records of the Cuyahoga County jail reflect his confinement therein.

Appellant, in his first proposition of law, does not argue the inadmissibility of any of the preceding evidence. Instead, appellant at first reiterates the evidence that was produced during the trial with respect to his alibi of incarceration in the Cuyahoga County jail on the date of the murder, *i. e.*: (1) The court and jail records show he was in jail on that date; (2) inmates testified that he was in jail continuously during the period of confinement; and (3) no evidence of appellant's escape from or surreptitious re-entering into the jail was produced at the trial. Appellant then proceeds to recount the evidence presented against him. He argues with respect to the testimony of

Davidson and Ogeltree that they testified with the hope of leniency, referring to the Stark County prosecutor's promise to send a recommendation to the Governor. Appellant also states that Ogeltree bore malice toward him because of appellant's involvement with Ogeltree's former wife. Furthermore, appellant argues that it was revealed at trial that Ogeltree had told three people that appellant was not involved in the robbery and murder. Concerning the testimony of Rene Clark, appellant cites her earlier identification of a person other than appellant as the decedent's murderer. Moreover, appellant states that there was testimony that, after Rene Clark failed to identify appellant in a lineup, she was verbally abused by Sergeant William Newkirk of the Canton Police Department. Appellant thus implies intimidation with respect to her in-trial identification of appellant, but the record reveals that she denied this and stated that her earlier misidentification was the intentional product of her fear. Appellant continues to proceed with his refutation of appellee's evidence. This court, however, discerns little utility in complete reiteration of appellant's argument.

It is readily apparent that appellant, in his first proposition, is not asserting the insufficiency of the evidence presented at trial, but is engaging in an attack on the credibility of the evidence. Clearly, the evidence produced by the appellee, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Atkins, supra,* at page 546. Credibility is a question of fact to be determined by the jury and a reviewing court should not substitute its judgment for that of the jury. *State* v. *Kehn* (1977), 50 Ohio St. 2d 11; *State* v. *Wolery* (1976), 46 Ohio St. 2d 316. This court's recent statement in *Feliciano* v. *Kreiger* (1977), 50 Ohio St. 2d 69, 72, is controlling in this cause:

"Since reasonable minds could reach different conclusions concerning this testimony, determination as to what occurred was a question of fact for the jury. * * * *State* v. *Antill* (1964), 176 Ohio St. 61. This court on review will

not disturb this jury finding so long as there was competent evidence to support it. * * *"

Determining, therefore, upon our review of the record that there was substantial evidence presented which, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt, we find no merit to appellant's first proposition of law.

## II.

Appellant, in his second proposition of law, alleges that for the reasons stated in his first proposition the verdict in the instant cause was clearly against the weight of the evidence and that the Court of Appeals failed to weigh the evidence.

We find no merit to appellant's second proposition of law. It is the function of the jury to resolve the facts of the case and determine the credibility of the witnesses before it. *State* v. *Clay* (1972), 34 Ohio St. 2d 250. Thus, it is the accepted rule in Ohio that, where there is a conflict of evidence, the jury is to resolve the conflict, and its judgment will be affirmed if there is substantial evidence which, if accredited, would prove all elements of the crime. *State* v. *Clay* (1972), 29 Ohio App. 2d 206, affirmed *State* v. *Clay, supra* (34 Ohio St. 2d 250). In the instant cause, the Court of Appeals stated, in its opinion:

"Upon a careful consideration of the entire evidence, we find ample competent evidence, which if believed by the triers of fact, warrants a finding of guilty beyond a reasonable doubt of the crime as charged. * * *"

The second assignment of error is, accordingly, overruled.

## III.

Appellant's third proposition of law provides: "Evidence should be excluded where it does not logically tend to prove or disprove an issue in the case or where its relevancy is outweighed by its tendency to confuse or mislead the jury." The evidence complained of by appellant in this proposition concerns his alibi of incarceration in the Cuyahoga County jail on the day of the murder and

appellee's attempt to refute the record-keeping system of the Cuyahoga County jail. We find the Court of Appeals' resolution of this proposition below to be well reasoned. Specifically, appellant presented various records of the Cuyahoga County jail which showed that he should have been in the jail at the time decedent was killed. The Court of Appeals found that having offered the records as proof of the truth therein stated, as well as proof of the facts reasonably to be inferred therefrom, appellant placed in issue the credibility generally of the records, the record-making process and the record keepers.

Upon a review of the contested testimony, we find that it was relevant, in that it tended to disprove the accuracy of the jail records, which was a question in dispute in the instant cause. The contested evidence went to the credibility of the various jail records by demonstrating the overall inefficiency of the persons and the system in which they were maintained and the general lack of inmate supervision.

Moreover, upon an examination of the record, we find that the admission of certain of this testimony occurred without an objection[2] and that a great proportion of this testimony occurred during cross-examination. The trial judge is posited with broad discretion in controlling cross-examination, and the appellant has the burden to show a patent abuse of discretion. *Sabo* v. *State* (1928), 119 Ohio St. 231; *State* v. *McElroy* (1970), 22 Ohio App. 2d 103, 111. We find, in the instant cause, that the admission of this testimony was relevant to the credibility of the jail records which support appellant's alibi and was neither an abuse of discretion nor a resultant prejudicial harm to appellant.

---

[2]The record reveals that, on the cross-examination of Frank Urankar, numerous questions concerning gambling in the Cuyahoga County jail were asked and answered before appellant's counsel objected to the specific question as to the extent of the gambling.

Lieutenant Steven Popovich also answered questions concerning gambling in the jail on cross-examination, and the record reveals no objection to these questions being raised by appellant's counsel.

Appellant's third proposition of law is overruled.

*IV.*

Appellant, in his fourth proposition of law, argues that the trial court erred in permitting Ogeltree and Davidson to testify that they had received a threatening note and that the jail trusty who delivered the note stated that it was from the appellant. Appellant also contends that the trial court erroneously admitted the testimony of one James Curry, that he was told two weeks before the trial by three men not to testify and that they reminded him that he had a brother and sister.

Appellant relies on *Mefford* v. *State* (1920), 13 Ohio App. 106, wherein the court stated, at page 107:

"Attempts by persons other than the accused to bribe witnesses, or otherwise to suppress or manufacture evidence, are evidence against the accused when, but only when, it is proven that he was connected with such attempts. Acts and statements of third persons, not known or authorized by him, are inadmissible."

However, in *Mefford, supra,* the court was confronted not with the actions of the accused, but that of his attorney. In the instant cause, Ogeltree testified, without objection, that he received a threatening note which was signed by the appellant. Davidson testified that when he received the note its deliverer, a jail trusty, stated that it was from the appellant.

Furthermore, the Court of Appeals found that this evidence was made proper because of the opening statement of appellant's counsel, which inferred that the testimony of the state's claimed accomplice witnesses was a recent fabrication prompted by a strong motive to swear falsely. The Court of Appeals, therefore, held that this evidence was relevant to show the circumstances under which the state's witnesses had been placed by their election to testify and specifically for the purpose of showing that they had something to lose as well as to gain by testifying.

Assuming, *arguendo,* that the admission of this testi-

mony was erroneous, upon a review of the entire record, disregarding the objectionable testimony by Davidson and Ogeltree, this court finds the error constitutionally harmless. *Harrington* v. *California* (1969), 395 U. S. 250; *Chapman* v. *California* (1967), 386 U. S. 18; *Schneble* v. *Florida* (1972), 405 U. S. 427. In *Schneble, supra,* the United States Supreme Court stated:

"* * * In *Bruton,* the Court pointed out that '[a] defendant is entitled to a fair trial, but not a perfect one.' 391 U. S., at 135, quoting *Lutwak* v. *United States,* 344 U. S. 604, 619 (1953). Thus, unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required. See, *Chapman* v. *Calif.,* 386 U. S. 18, 24 (1967). In this case, we conclude that the 'minds of an average jury' would not have found the State's case significantly less persuasive had the testimony * * * been excluded. The admission into evidence of these statements, therefore, was at most harmless error."

In the instant cause, since there was the testimony of at least three persons[3] as to the appellant's participation in the robbery and murder, we find that these statements of threat about testifying, as relating to the appellant's guilt, were merely cumulative of other evidence before the jury.

The testimony of Curry, concerning the threat he received about his testifying, in no manner implied that the appellant was responsible for the threat. Further, appellant has failed to demonstrate any resultant prejudice from its alleged improper admission.

Accordingly, appellant's fourth proposition of law is rejected.

### V.

In his fifth proposition of law, appellant states:

"A court order directing that a defendant be incarcerated pending a trial cannot be collaterally attacked by

---

[3] Ogeltree, Davidson and Rene Clark all testified that appellant actually participated in the robbery and murder of the decedent.

evidence that the defendant was not incarcerated during this period."

Appellant, in this proposition, raises an allegation of error not presented in the court below. In *State* v. *Williams* (1977), 51 Ohio St. 2d 112, this court reaffirmed, in paragraph two of the syllabus, its adherence to the well-established law that:

"The Supreme Court will not ordinarily consider a claim of error that was not raised in any way in the Court of Appeals and was not considered or decided by that court. (*Toledo* v. *Reasonover*, 5 Ohio St. 2d 22, approved and followed.)"

Appellant's proposition of law No. 5 is rejected.

## VI.

In his final proposition of law, appellant asserts that he was denied the due process of the law because the atmosphere in and around the courtroom was so hostile as to interfere with the trial process. Appellant is arguing, in this proposition of law, that he has a right to be "fairly tried in a public tribunal free of prejudice, passion, excitment and tyrannical power'" (309 U. S. 227, 236-237) and that, in the instant cause, this right was denied him by the conduct of the judge and prosecutor.

This proposition of law raises, *inter alia,* the issue presented to the Court of Appeals concerning the admissibility of the testimony of one John Appling and the inquiry of other witnesses as to their knowledge of Appling. It is apparent from the record that appellant at no time objected to any of the proceedings concerning the testimony of Appling. Accordingly, the appellant is precluded by Crim. R. 30 from using this issue on appeal. *State* v. *Williams, supra.* (51 Ohio St. 2d 112). We concur with the Court of Appeals' resolution of appellant's contention concerning the questions asked to certain of the defense witnesses about their knowledge of Appling, who was supposedly in jail on the date of the murder. The questions

---

[4] *Chambers* v. *Florida* (1940), 309 U. S. 227, 236-237.

were appropriate under the totality of the circumstances to test the recollection and credibility of the witnesses and the records they purport to support insofar as their accuracy was concerned and whether they, in fact, reflected the presence of persons supposedly confined in the Cuyahoga County jail.

The remaining issues—the misconduct of the prosecutor and the trial judge—presented in this proposition were not raised in the Court of Appeals and need not be considered herein. *Toledo* v. *Reasonover, supra; State* v. *Williams, supra.*

Apart from the failure to present these issues in the Court of Appeals, we find that appellant's assertions of errors relating to the misconduct of the prosecutor and trial judge are totally lacking in substance. The assertion that the judge's conduct was not as a disinterested mediator is premised in part upon the following comment made by the judge during the testimony of James Miller, a deputy clerk of courts of the Court of Common Pleas of Cuyahoga County concerning the records pertaining to Walker:

"Q. Can you tell me how many other mistakes you have made?

"Mr. Tolliver: Objection to this, judge.

"The Court: Yes, sustained.

"Q. Nothing further.

"A. I am not a handwriting expert.

"The Court: That answer will be stricken from the record. This witness will be admonished from making a statement without a question before hm, sir. You are not in Cuyahoga County today, and the jury will disregard it.

"Mr. Tolliver: Oh, judge.

"The Court: I withdraw that and the jury will disregard my remarks, too."

As the record reflects, the trial judge immediately rectified his statement and admonished the jury to disregard it. This court has examined the other alleged errors, which mainly relate to the trial judge's discretion in control of cross-examination during trial, and, finding them to

be without merit, this court will not address them herein.

Appellant's sixth proposition of law is rejected.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, P. BROWN, SWEENEY and LOCHER, JJ., concur.

CELEBREZZE and W. BROWN, JJ., dissent.

CELEBREZZE, J., dissenting. Upon review of the record compiled at the trial of this cause I am of the opinion that reasonable minds must conclude that appellant's guilt was not established beyond a reasonable doubt. I am therefore constrained to dissent from the majority's decision to affirm appellant's conviction and sentence of life imprisonment.

At the outset of the opinion the majority states that its review will be confined to a determination of whether there was substantial evidence present at trial which would establish appellant's participation in the robbery-homicide. The majority then recounts the damning testimony presented by two incarcerated felons who were convicted as accomplices to this homicide, and who, more than three years after the homicide, first came forward with information as to appellant's alleged involvement in this crime, to be offered in exchange for a recommendation of leniency. The majority further observes that this inherently suspect and untrustworthy testimony is buttressed by the testimony of a young woman who was originally unable to identify appellant in a police line-up, but who, after some degree of encouragement by police officials, was later able to positively identify appellant in the courtroom. It is conceded by the majority that these three individuals were the only witnesses to testify that appellant actually participated in the robbery and murder of the decedent. Nevertheless, the majority concludes that the state presented substantial evidence.

As his defense, appellant presented evidence tending to establish an alibi. The deputy clerk of courts for Cuyahoga County appeared as a witness for the defense, and testified that his records showed that appellant was unable to post bond on an unrelated charge, and therefore was incarcerated in the Cuyahoga County jail during the period from April 14, 1972, until the charge was dismissed on August 1, 1972. The prosecution, in fact, stipulated that the certified copy of the docket entry in the custody of the deputy clerk indicated that appellant was continuously confined for this three and one-half month period. Three fellow inmates of the Cuyahoga County jail during this pertinent period of time also testified that appellant was never absent from the cellblock, except for occasional court appearances. Several individuals employed by the Cuyahoga County sheriff at the time of appellant's confinement testified that each night a body count was taken, and that unless this count corresponded with records kept at the jail's booking desk a thorough search of the cellblock would be in order.

To overcome this evidence of alibi the prosecution introduced the testimony of two men, one of whom was certain he saw appellant on the street in Cleveland in July 1972, while the other man said he too saw appellant on the street in the summer of 1972, although he could not "remember the months and things." In addition, the prosecution brought before the jury's attention a number of distracting and irrelevant facts garnered primarily from newspaper articles, and having to do with, among other things, gambling and the use of drugs in the jail, a hunger strike by the inmates, and the conviction of a former jail officer for theft of certain property.

Appellant moved, pursuant to Crim. R. 29, for a judgment of acquittal at the close of the state's case, and upon conclusion of the defense. The trial court denied both motions. It has been suggested that, in determining the sufficiency of the evidence to withstand a motion for a judgment of acquittal, the proper test is whether, after

the evidence and all reasonable inferences that may be drawn therefrom are viewed in the light most favorable to the state, there must be some doubt in a reasonable mind as to the guilt of the accused. See *State* v. *Hancock* (1976), 48 Ohio St. 2d 147, 151-152. Similarly, the legal test for the sufficiency of alibi evidence is whether it raises a reasonable doubt of guilt. See *Walters* v. *State* (1883), 39 Ohio St. 215; *State* v. *Childs* (1968), 14 Ohio St. 2d 56. In light of the nature of appellant's alibi evidence, vis-a-vis the evidence presented by the state in rebuttal of the alibi, there must be some doubt in a reasonable mind as to the guilt of appellant. To conclude otherwise is to argue that the average reasonable mind would be convinced that one confined in the Cuyahoga County jail could manage to escape therefrom, could travel to another county, there to commit a murder, and could later re-enter the jail facility, undetected, only to be subsequently released by an order of the court. I believe it patently apparent that such a theory is rife with reasonable doubt.

Because the prosecution's case was insufficient to overcome appellant's alibi defense the trial court erred in denying appellant's motion for a judgment of acquittal. I must, therefore, respectfully dissent.

W. Brown, J., concurs in the foregoing dissenting opinion.