[Cite as *State v. Grimes*, 2019-Ohio-1559.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No. WD-18-012

　　　　Appellee                              Trial Court No. 2017CR0454

v.

Eric Anthony Grimes                       **DECISION AND JUDGMENT**

　　　　Appellant                            Decided:  April 26, 2019

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney,
David T. Harold and James A. Hoppenjans, Assistant Prosecuting
Attorneys, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Following a jury verdict, defendant-appellant, Eric Anthony Grimes, appeals

the January 26, 2018 judgment of the Wood County Court of Common Pleas, convicting

him of assault and failure to comply, and sentencing him to a jail term of 180 days and three years' community control. For the reasons that follow, we affirm the trial court judgment.

## I. Background

{¶ 2} On September 13, 2017, Officer Nick Cowell of the Walbridge Police Department was sitting stationary in his patrol car when he observed a blue minivan drive down Drouillard Road at a rate of speed that appeared to be considerably faster than the posted 25-mile-per-hour speed limit. Upon seeing the police vehicle, the driver of the minivan abruptly slowed and appeared nervous. Officer Cowell pulled behind him, noticed that the license plates had expired in 2014, ran the license plate, and learned that the registered owner—who matched the driver's physical description—was under multiple license suspensions. Officer Cowell initiated a stop of the vehicle.

{¶ 3} Officer Cowell approached the minivan and asked the driver—who was ultimately identified as Eric Anthony Grimes—for his license, registration, and proof of insurance. Grimes spoke through the window, which was rolled down approximately one inch, and responded that he did not need a license to travel. He demanded that Officer Cowell show him two forms of identification and asked to speak to his supervisor. In the meantime, Sergeant Douglas Hubaker, of the Northwood Police Department, arrived on the scene to assist, and Officer Cowell waved him over.

{¶ 4} After briefly conferring with one another behind Grimes's minivan, Officer Cowell and Sergeant Hubaker approached Grimes's vehicle together. The officers

2.

repeatedly requested that Grimes produce his driver's license and Grimes disputed their authority and continued to demand identification from the officers. Sergeant Hubaker asked Grimes to step out of the vehicle, but he refused.

{¶ 5} Grimes had rolled the window down a bit further than it was before, and Sergeant Hubaker reached his arm into the vehicle to unlock the car door. Grimes grabbed Sergeant's Hubaker's arm and rolled the window up, trapping him. Sergeant Hubaker struggled to free his arm, and Officer Cowell reached for Sergeant Hubaker's patrol baton, believing he may need to break the window to free the sergeant's arm should Grimes put the vehicle into drive. Ultimately, Sergeant Hubaker was able to unlock and open the door and to roll the window down to free his arm. The officers assisted Grimes out of the car and arrested him. Sergeant Hubaker later saw a physician for injuries to his deltoid muscle. In all, he required four doctor's visits.

{¶ 6} Grimes was charged with assault on a peace officer, a violation of R.C. 2903.13(A) and (C)(5), and failure to comply with an order or signal of a police officer, a violation of R.C. 2921.331(A) and (C)(2). Following a jury trial, Grimes was convicted of both offenses. The trial court sentenced Grimes to three years' community control on the assault conviction. As to the conviction for failure to comply, the court imposed a jail term of 180 days, suspended on the condition that he comply with all conditions of a one-year period of probation. The court also imposed costs and a two-year license suspension.

**{¶ 7}** Grimes appealed the trial court judgment and assigns the following errors for our review:

> I. The trial court erred in denying Appellant's Crim.R. 29 motion.

> II. The jury's verdict was against the manifest weight of the evidence.

## II. Law and Analysis

**{¶ 8}** Following the presentation of the state's case, and again, following the presentation of his case, Grimes moved for acquittal under Crim.R. 29. He first argues that the trial court erred when it denied his motion with respect to the assault charge. In his second assignment of error, Grimes argues that the jury's verdict convicting him of assault was against the manifest weight of the evidence. We consider each of these assignments in turn.

## A. Crim.R. 29

**{¶ 9}** In his first assignment of error, Grimes claims that the trial court erred when it denied his motion for acquittal with respect to the assault charge. He argues that there was no credible evidence that he knowingly tried to assault or injure Sergeant Hubaker. He insists that he was actually trying to *assist* Sergeant Hubaker and to *prevent* injury from occurring.

**{¶ 10}** Under Crim.R. 29(A), "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if

4.

the evidence is insufficient to sustain a conviction of such offense or offenses  * * *." Because a motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence, the denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence."  *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 11} Whether there is sufficient evidence to support a conviction is a question of law.  *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.)  *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997).  In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses.  *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 12} Under R.C. 2903.13(A) and (C)(5), "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *.  If the victim of the offense is a peace officer * * *, while in the performance of their official duties, assault is a felony of the fourth degree."  R.C. 2901.22(B) provides, in pertinent part, that "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

{¶ 13} Here, the state presented testimony from Sergeant Hubaker and Officer Cowell, and it showed the jury the video recording of the traffic stop.  Both Sergeant

5.

Hubaker and Officer Colwell testified that Grimes rolled the window up on Sergeant Hubaker's arm. Sergeant Hubaker testified that Grimes "used his left hand to kind of grab ahold of my hand and during the struggle, he pulled the window crank and it rolled my arm up into the window." He testified that Grimes's conduct appeared to be intentional and not merely an accident.

{¶ 14} Grimes testified in his own defense. He claimed that Sergeant Hubaker reached into the window to try to grab the doorknob, and, in doing so, "[Sergeant Hubaker] flipped the knob on the window and it rolled up on his arm." Grimes maintained that Sergeant Hubaker was fighting him, thinking that Grimes was trying to hurt him, but he was actually trying to help Sergeant Hubaker. He said that he did not remember "physically grabbing him," and that grabbing Sergeant Hubaker's arm was his "natural reaction" to try to "stop the situation from taking place." Grimes insisted that it was not his intent to hurt Sergeant Hubaker, and if he actually wanted to hurt him, he could have driven off with his arm stuck in the window.

{¶ 15} We must view the evidence in a light most favorable to the state in considering a trial court's denial of a motion for acquittal under Crim.R. 29(A). Given Sergeant Hubaker's testimony that Grimes appeared to *intentionally* roll the window up while grabbing onto Sergeant Hubaker's arm, trapping it in the window, we must conclude that the state presented evidence here going to each essential element of the offense, including that Grimes's conduct was committed "knowingly."

{¶ 16} We find Grimes's first assignment of error not well-taken.

6.

## B. Manifest weight

{¶ 17} In his second assignment of error, Grimes claims that the jury's verdict convicting him of assault was against the manifest weight of the evidence. He complains that the jury totally discounted his testimony and convicted him "not based on the evidence, but because of how he presented himself on the witness stand."

{¶ 18} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 19} Grimes testified that he believed that he had been profiled based on his "complexion," that "something wasn't right" about Officer Colwell, and that he feared that he was going to die during the encounter with the officers. He explains on appeal that he was "reluctant to cooperate" with the officers because he was "concerned for his

7.

personal safety." Grimes maintains that he testified as "a thoughtful and sensitive, yet provocative nonconformist who questioned the officers' authority to initiate the stop and seize his person," but believes that "he was perceived by the jury to have behaved in an inappropriate manner based on his response to the officers' showing of authority."

{¶ 20} It is the duty of the jury to weigh the evidence and determine credibility. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 155. Despite Grimes's suggestion to the contrary, it is appropriate for the jury to assess how the witnesses "present [themselves] on the witness stand." In fact, this is the advantage that the jury has over the reviewing court: it has the benefit of seeing the witnesses, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14. It is because of this advantage that we must extend special deference to the jury's credibility determinations, even under a manifest-weight standard. *Id.*

{¶ 21} Here, the jury heard testimony and viewed the recording of the traffic stop. It chose to believe Sergeant Hubaker's version of events—that Grimes intentionally rolled the window up while pulling his arm into the vehicle, effectively trapping him—over Grimes's. After reviewing the evidence—including the recording—we are not convinced that the evidence weighs heavily against Grimes's conviction or that the jury lost its way or created a manifest miscarriage of justice by convicting Grimes of assault.

{¶ 22} We find Grimes's second assignment of error not well-taken.

8.

### III. Conclusion

{¶ 23} We conclude that Grimes's assault conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, therefore, we find his two assignments of error not well-taken. We affirm the January 26, 2018 judgment of the Wood County Court of Common Pleas. Grimes is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Christine E. Mayle, P.J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.