[Cite as *State v. Miller*, 2021-Ohio-684.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 20CA009 |
| | : | |
| JACOB MILLER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the Holmes County Court
                               of Common Pleas, Case No. 19CR027



JUDGMENT:                      AFFIRMED



DATE OF JUDGMENT ENTRY:        March 9, 2021



APPEARANCES:


For Plaintiff-Appellee:                For Defendant-Appellant:

SEAN WARNER                            JEFFREY G. KELLOGG
HOLMES COUNTY PROSECUTOR               5 S. Washington St.
                                       Millersburg, OH 44654
ROBERT K. HENDRIX
164 E. Jackson St.
Millersburg, OH 44654

*Delaney, J.*

{¶1} Defendant-Appellant Jacob Miller appeals the February 21, 2020 sentencing entry of the Holmes County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Deputy Brooke Yoder is an investigator with the Holmes County Sheriff's Department assigned to assist Children's Services with child abuse complaints, child neglect complaints, and welfare fraud investigations. On February 15, 2019, Deputy Yoder was contacted by the Holmes County Children's Services to investigate a burn injury to a child. She and two Children's Services case workers reported to the child's residence located in Millersburg, Holmes County, Ohio.

{¶3} Deputy Yoder met the owners of the residence. The owner told her that his daughter, T.H. resided in the basement apartment with her boyfriend, Defendant-Appellant Jacob Miller, and their two children. As they were speaking, Miller arrived at the residence with the two children. Deputy Yoder saw that one of the children, identified as Z.M., had a large white bandage covering the top of his left hand. Z.M. was four years old.

{¶4} Miller, the children, Deputy Yoder, and the caseworkers went to the basement apartment. The caseworkers spoke with the children in another room while Deputy Yoder spoke with Miller. Deputy Yoder observed that the living area of the basement apartment had a gas burning stove that was designed to look like a wood burning stove. The top of the stove was attached to a metal chimney. The outside of the stove was black metal with a glass window on the front. Through the glass window, she could see fake wood logs and a gas flame. The gas stove was adjusted with a remote

thermostat and would automatically ignite depending on the thermostat setting. The top of the stove had multiple layers of casing and did not get as hot as the glass window on the front of the stove.

{¶5} Deputy Yoder asked Miller what happened to Z.M.'s left hand. Miller said on February 8, 2019, Z.M. walked up and put his hand on the stove for just a second. He pulled Z.M. away but Z.M. burned his hand. He stated that Z.M. lies all the time. Miller and T.H. did not seek medical attention for the burn, but used antibiotic ointment and bandaged it.

{¶6} The caseworker took the bandage off Z.M.'s hand and Z.M. said his hand hurt. Deputy Yoder said there was a large pealing wound across the top of his left hand, about one and a half inches in diameter. The inside of the wound was pinkish and yellow, there was some bloody areas, but it appeared the outside of the wound was starting to heal.

{¶7} When asked how he burned his hand, Z.M. told the caseworker that Miller caused it. Z.M. showed them the stove and touched the top of the stove. Deputy Yoder asked Miller again how Z.M. burned his hand. Miller said they were playing a game and Z.M. was running in the living area saying "roast me." Miller took Z.M.'s hand and put it on top of the stove, but it wasn't hot, so he moved it to the glass window. Miller held Z.M.'s hand to the glass for three to four seconds, long enough to cause a burn. He said Z.M. tried to pull his hand away.

{¶8} He told Deputy Yoder that he did not tell her this first because of his past. Miller had been previously convicted of domestic violence and child endangering, which involved Z.M.

{¶9}   Deputy Yoder placed Miller under arrest for domestic violence.

{¶10} On March 4, 2019, Miller waived an indictment and he pled not guilty to a Bill of Information:

1. Felonious assault, a felony of the second degree in violation of R.C. 2903.11(A)(1) and (D)(1)(a);

2. Domestic violence, a felony of the third degree in violation of R.C. 2919.25(A) and (D)(4);

3. Endangering children, a felony of the second degree in violation of R.C. 2919.22(B)(3) and (E)(3);

4. Endangering children, a felony of the second degree in violation of R.C. 2919.22(B)(3) and (E)(3);

5. Endangering children, a felony of the second degree in violation of R.C. 2919.22(B)(1) and (E)(2)(d); and

6. Endangering children, a felony of the second degree in violation of R.C. 2919.22(A) and (E)(2)(b).

{¶11} Miller filed a written plea of not guilty by reason of insanity. The case was stayed pending a report from the Forensic Diagnostic Center. The trial court held a NGRI hearing on June 26, 2019 where both parties stipulated to the evaluation report.

{¶12} The matter went to a jury trial on February 18, 2020.

{¶13} Deputy Yoder first testified to her investigation on February 15, 2019. After she arrested Miller, Deputy Yoder followed up with T.H. in July 2019. When Deputy Yoder first attempted contact with T.H., T.H. would not speak to her or let her speak with the children. Deputy Yoder obtained a search warrant and served it on T.H. T.H. took the

warrant, went back into the house, and then brought out Z.M. Deputy Yoder examined his left hand and it appeared that he had makeup covering his left hand and blended into his forearm. T.H. admitted to covering the scar on Z.M.'s hand with makeup and she was charged with tampering with evidence, to which she pled guilty.

{¶14} The State next offered the testimony of Dr. Paul McPherson, a specialist in child abuse pediatrics with Akron Children's Hospital. In February 2019, Dr. McPherson received photographs of Z.M.'s left hand from Children's Services. He did not examine Z.M. in person. Dr. McPherson referred Z.M. to a burn specialist in Cleveland, Ohio.

{¶15} Dr. McPherson testified it was his opinion to a reasonable degree of medical certainty that Z.M. suffered a second degree burn and some portions could be a third degree burn on the top of his left hand. The injury Z.M. suffered was consistent with a contact burn. Z.M. would have been in pain at the time of the injury and the pain from a burn continues to evolve after the withdrawal from an object. Miller did not seek medical care for Z.M. after the injury. Dr. McPherson said Z.M. should have received medical attention after the injury because the burn was deep enough to risk infection. The scar on the top of Z.M.'s hand would leave some indication on his skin and could affect the functionality of his hand in the future. Dr. McPherson reviewed the burn specialist report from November 2019, which found no contractures and that the burn was likely a second degree burn.

{¶16} Miller testified on his own behalf. On February 8, 2019, he and T.H. took the children to McDonalds for dinner. He remembered it was a warm day. After they got home from McDonalds, T.H. and one of the children went to bed. Z.M. and Miller were watching television in the living area and then played with toys. They started a game of

tag where Miller would run after Z.M. and catch him. Z.M. would get away and Miller would catch him again. While they were playing, Miller said that Z.M.

> started to say roast me, roast me and then in a joking manner and uh, he ended up by the, by the stopping by the stove while we while I was chasing him and uh, I jokingly laced his hand on top of the stove and uh, he laughed and said, oh well that's not even hot and then started running away again and uh, I kept chasing him for a while and uh, he ended up in front of the stove again and he was still saying roast me and um. * * *

(T. 143).

{¶17} Miller said Z.M. used the phrase "roast me" because he had told Z.M. to stay away from the stove or he would get roasted. They continued to play tag and ended up by the stove again, facing each other. Miller said, "the second time that we're by the stove I uh, had taken his hand again and uh, put it to the glass part of the stove." (T. 144). Z.M. immediately jerked back and Miller looked at his hand. He saw a red spot. Z.M. started crying and Miller took him to the bathroom to run water over it. Miller was able to get Z.M. calmed down and T.H. put antibiotic ointment on his hand.

{¶18} Miller did not think the stove had been running. He did not see flames in the stove and the apartment did not feel warm. Miller did not adjust the thermostat for the gas stove; T.H. controlled the temperature on the stove. Miller testified that he did not put Z.M.'s hand on the stove to punish Z.M; they were just playing. When he punished the children, he spanked them.

{¶19} When Miller spoke to Deputy Yoder, he was afraid to tell her that he put Z.M.'s hand on the stove. He had previous experience with Children's Services and was

afraid to say anything that might get him into trouble. He had lost custody of his oldest child for two years, but he successfully completed his case plan, which included counseling and parenting classes.

{¶20} On the day of the injury, T.H. testified she had turned down the stove to 45 degrees. When the family got home from McDonalds right before Z.M. was injured, the apartment was very warm and she saw the thermostat for the gas stove was turned up to 80 degrees. She set it back down to 45 degrees. She did not see the incident, but from the bedroom, she could see Z.M. and Miller running in the living area. After Miller was arrested, T.H. took Z.M. to Urgent Care, which gave Z.M. ointment for the burn.

{¶21} Based on the evidence presented, the jury rendered its decision. It could not come to a unanimous written verdict on Count 1, Felonious Assault and the State dismissed the charge. The jury found Miller not guilty of Count 3 and Count 4, Endangering Children. The jury found Miller guilty of Count 2, Domestic Violence; and Counts 5 and 6, Endangering Children. The trial court set the matter for a sentencing hearing and ordered a pre-sentence investigation.

{¶22} At the sentencing hearing held on April 2, 2020, the trial court sentenced Miller to two years in prison on Count 2, six years in prison on Count 5, and two years in prison on Count 6. The sentences were to be served concurrently. (Sentencing Entry, Feb. 21, 2020).

{¶23} It is from this sentencing entry that Miller now appeals.

## ASSIGNMENTS OF ERROR

{¶24} Miller raises one Assignment of Error:

{¶25} "I. THE APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## ANALYSIS

{¶26} Miller argues in his sole Assignment of Error that his convictions for Domestic Violence and Endangering Children were against the manifest weight of the evidence.

## Standard of Review

{¶27} The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), in which the Court distinguished between "sufficiency of the evidence" and "manifest weight of the evidence," finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386. The Court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386–387. "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. The Court noted that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Thompkins, supra* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶28} To evaluate a manifest-weight claim, a court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, at ¶ 328. The court must decide whether " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

### Mens Rea

{¶29} Miller argues his convictions for domestic violence and endangering children were against the manifest weight of the evidence because the jury lost its way when it found he formed the requisite mens rea at the time of the alleged offense. We disagree.

{¶30} The jury convicted Miller of domestic violence, in violation of R.C. 2919.25(A) and (D)(4). R.C. 2919.25 defines domestic violence as:

(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

* * *

(D)(4) If the offender previously has pleaded guilty to or been convicted of two or more offenses of domestic violence or two or more violations or offenses of the type described in division (D)(3) of this section involving a person who was a family or household member at the time of the violations or offenses, a violation of division (A) or (B) of this section is a felony of the third degree, and, if the offender knew that the victim of the violation was pregnant at the time of the violation, the court shall impose a mandatory

prison term on the offender pursuant to division (D)(6) of this section, and a violation of division (C) of this section is a misdemeanor of the first degree.

{¶31} R.C. 2901.22(B) defines when a person acts "knowingly": "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."

{¶32} The jury also convicted Miller of two counts of endangering children. Count Five stated Miller violated R.C. 2919.22(B)(1) and (E)(2)(d). The statute reads:

(B) No person shall do any of the following to a child under eighteen years

of age * * *:

(1) Abuse the child;

* * *

(E)(2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following, and, in the circumstances described in division (E)(2)(e) of this section, that division applies:

* * *

(d) If the violation is a violation of division (B)(1) of this section and results

in serious physical harm to the child involved, a felony of the second degree.

A successful conviction under R.C. 2919.22(B)(1) requires the State to prove beyond a reasonable doubt that: (1) the child is under the age of 18 years of age; (2) an affirmative act of abuse occurred; and (3) the defendant recklessly committed the act of abuse. *State v. Swain*, 4th Dist. Ross No.01CA2591, 2002-Ohio-414, *7. R.C. 2901.22(C) provides:

A person acts recklessly when, with heedless indifference to the

consequences, the person disregards a substantial and unjustifiable risk

that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶33} The jury also found Miller guilty of Count Six, endangering children, which was in violation of R.C. 2919.22(A) and (E)(2)(b). The portions of the statute read:

(A) No person, who is the parent * * * of a child under eighteen years of age * * *, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *

* * *

(E)(2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following, and, in the circumstances described in division (E)(2)(e) of this section, that division applies:

* * *

(b) If the offender previously has been convicted of an offense under this section or of any offense involving neglect, abandonment, contributing to the delinquency of, or physical abuse of a child, except as otherwise provided in division (E)(2)(c) or (d) of this section, a felony of the fourth degree;

{¶34} A successful conviction under R.C. 2919.22(A) requires the State to prove that: (1) a person having custody or control over (2) a child under 18 years of age (3) recklessly created a substantial risk to the health or safety of the child (4) by violating a

duty of care, protection, or support. *State v. Swain*, 2002-Ohio-414, *7. " 'Substantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). The culpable mental state under R.C. 2919.22(A) is recklessness.

{¶35} In his appellate brief, Miller states he does not challenge the evidence going to other elements of domestic violence and/or endangering children. He does not dispute the injury Z.M. incurred on February 8, 2019 meets the legal definition of "serious physical harm." Miller also does not dispute that he placed Z.M.'s hand on the stove, which caused the serious physical harm to Z.M.

{¶36} Miller argues there was a conflict in evidence related to his state of mind at the time of Z.M.'s injury. The State presented evidence that Miller placed Z.M.'s hand on the stove's glass window with the intention to burn his hand or in the alternative, he perversely disregarded a known risk that the placing his son's hand on the glass would cause a burn. Miller states he presented evidence that he did not know the stove was operating and therefore, he believed the stove was incapable of causing injury at that time.

{¶37} As the trier of fact, the jury was required to determine the credibility of the witnesses and the weight to be accorded their testimony. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus. Moreover, "[a] conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent testimony." *State v. Gaver*, 5th Dist. Stark No. 2015CA00204, 2016-Ohio-7055, 2016 WL 5610107, ¶ 58 citing *State v. Humphries*, 5th Dist. Stark No. 06CA00156, 2008–Ohio–

388, ¶ 37, citing *State v. Kendall*, 10th District Franklin No. 00AP–1098, unreported (June 29, 2001).

{¶38} T.H. and Miller testified that Miller did not control the temperature of the stove. T.H. stated when the family got home from McDonalds on the day of the injury, the apartment was warm and the stove temperature was set at 80 degrees. She said she turned the stove down to 45 degrees but it is unknown how long that was before the injury. Miller testified he thought the stove was off because he did not see flames.

{¶39} A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist. *State v. Gaver*, 5th Dist. Stark No. 2015CA00204, 2016-Ohio-7055, 2016 WL 5610107, ¶ 54. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). The evidence in this case showed that Miller had previously warned his child to stay away from the stove because it would burn him or, in the words used by Miller, "roast him." On the day of the injury, Miller stated that Z.M. asked his father to play chase and "roast him." According to this testimony, a four-year-old child was aware the stove could burn him. Miller testified he intentionally placed his son's hand on the stove that he had warned his child to stay away from because he could be burned. Deputy Yoder testified that Miller told her he took Z.M.'s hand and put it on top of the stove, but it wasn't hot, so he moved it to the glass window. Within seconds of placing his hand on the glass window, Z.M. suffered a second degree burn.

{¶40} Based upon the entire record in this matter, we find Miller's convictions are not against the manifest weight of the evidence. To the contrary, the jury appears to have

fairly and impartially decided the matters before them because Miller was acquitted upon Counts Two and Three, Endangering Children, and could not reach a verdict on Count One, Felonious Assault. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and the defendant's witnesses. *See, State v. Aeschilmann*, 5th Dist. Stark No.2013CA00192, 2014–Ohio–4462. This Court will not disturb the jury's finding if it is supported by competent evidence. *Id.*, citing *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Miller's guilt.

{¶41} Miller's sole Assignment of Error is overruled.

## CONCLUSION

{¶42} The judgment of the Holmes County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, Earle, J., concur.