[Cite as *State v. Tessane*, 2024-Ohio-630.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 2023 CA 00109 |
| SEAN MICHAEL TESSANE | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:          Criminal Appeal from the Court of Common
                                  Pleas, Case No.  2022 CR 02562


JUDGMENT:                         Affirmed


DATE OF JUDGMENT ENTRY:           February 20, 2024


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

KYLE L. STONE                          BERNARD HUNT
PROSECUTING ATTORNEY                   2395 McGinty Road, NW
LISA A. NEMES                          North Canton, Oho  44720
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

{¶1} Appellant Sean Michael Tessane, appeals his conviction on one count of receiving stolen property, entered in the Stark County Court of Common Pleas following a jury trial. Appellant was also convicted of one count of possession of a Fentanyl-related compound and one count of aggravated possession of drugs but is not appealing those convictions.

{¶2} Appellee is the state of Ohio.

## STATEMENT OF THE FACTS

{¶3} For purposes of this Opinion, the relevant facts and procedural history are as follows:

{¶4} On December 27, 2022, the Stark County grand jury indicted Defendant-Appellant, Sean Michael Tessane, with one count of Possession of a Fentanyl-Related Compound, in violation of R.C. §2925.11(A)/(C)(11)(b ), a felony of the fourth degree; one count of Aggravated Possession of drugs, in violation of R.C. §2925.11(A)/(C)(1)(a), a felony of the fifth degree; and one count of Receiving Stolen property, in violation of R.C. §2913.51(A)/(C), a felony of the fifth degree.

{¶5} Appellant failed to appear for arraignment on January 27, 2023. The trial court issued a capias and revoked his bond.

{¶6} At his arraignment on May 19, 2023, Appellant pled not guilty to all charges.

{¶7} The matter proceeded to a jury trial on July 13, 2023.  At trial, the jury heard the following testimony:

{¶8} Deputy Kurtis Johnson of the Stark County Sheriff's Office testified that he worked the midnight shift on November 29, 2022. (T. at 110, 112). While on patrol in a

marked patrol vehicle, he observed a white GMC pickup truck with a temporary registration tag displayed in the back window. (T. at 113). A bicycle propped up against the window obscured the view of the registration tag. *Id.*

{¶9}    After the pickup crossed through the intersection of Southway and Raff in Canton Township, Stark County, Ohio, Dep. Johnson initiated a traffic stop. (T. at 114, 117). He approached the vehicle and observed two individuals occupying the driver and front passenger seats. *Id.* Appellant, was sitting in the passenger seat. (T. at 112-114, 127). Neither the driver nor Appellant had a valid driver's license. (T. at 114). Neither of the men were able to provide Dep. Johnson with information as to who owned the vehicle, nor could they provide proof that they had permission to have the truck. *Id.*

{¶10} Because he was unable to contact the vehicle owner, Dep. Johnson requested a tow truck to impound the truck. (T. at 114). Per department policy, Dep. Johnson had to conduct an administrative inventory to account for the belongings inside the truck prior to towing. *Id.* Dep. Johnson began the inventory and immediately located a burnt glass pipe, the type consistent with narcotics use, next to the driver seat. (T. at 114-115.) At that point, Dep. Johnson began a probable cause search which yielded more drug paraphernalia, including a syringe near the driver seat and another pipe on the passenger seat where Appellant had been sitting. (T. at 115).

{¶11} Additionally, Dep. Johnson found "numerous checks that were filled out, signed, and dated by 11 different people." *Id.* He also recovered a "large trash bag sitting on the passenger side floorboard that contained like mail scraps, as well as several more checks." *Id.*

**{¶12}** Both the driver and Appellant were placed under arrest. (T. at 115, 128). Both men "were detained in handcuffs, advised of their Miranda rights, and searched incident to arrest." *Id.* But Dep. Johnson actually Mirandized Appellant during that search. (T. at 139).

**{¶13}** While searching Appellant, Dep. Johnson "located a metal tin that was attached to his waistband." (T. at 116, 128). Dep. Johnson opened the tin and observed a "white crystalline substance inside * * *." (T. at 116, 122-123). Appellant admitted that the substance was methamphetamine. (T. at 116, 123, 129). Lab testing revealed that it was 0.07 grams of methamphetamine. (T. at 168-170).

**{¶14}** Officers then "collected all of the checks [they] found in the vehicle." (T. at 116). Because they could not immediately "verify the status of the checks" or determine where they came from, they did not file charges relative to the checks at the scene. (T. at 116). Appellant was however transported to the Stark County Jail on the drug-related charges. *Id.*

**{¶15}** While Appellant was being processed at the jail, officers searched and inventoried his property. (T. at 116, 129). Corrections Officer Robert Scott assisted with this intake process. (T. at 148-149). Appellant was asked to strip down to one layer and remove his socks. (T. at 117). Officer Scott observed a gray bag fall out of Appellant's sock as he removed the sock from his foot. (T. at 117, 124-125, 151-154). Appellant indicated the gray bag contained a base for a Fentanyl compound. (T. at 154). Officers took the bag containing this substance, logged it into evidence, and added an additional charge. *Id.* The investigation revealed the substance was "1.62 grams of fluorofentanyl, *** fentanyl, [and] tetrahydrocannabinol[.]." (T. at 142-145,172).

**{¶16}** Also during the search of Appellant's property, officers found two money orders in his possession. (T. at 116, 129). One of those money orders found in Tessane's possession was a "Woodforest money order". (T. at 118). Upon questioning as to how he came into possession of the money orders and the other checks found in his proximity, Appellant offered only "that he works for a home salvage company and often finds things inside of houses when they're restoring homes." (T. at 119).

**{¶17}** The money order contained the signature of, and contact information for, M.P. (T. at 118- 119). Dep. Johnson contacted M.P. and learned that she had placed the money order "in a secured U.S. Postal Service mailbox." (T. at 119). M.P. explained that she had mailed that money order to pay her rent two days prior. (T. at 119).

**{¶18}** At trial, M.P. identified State's Ex. 1 as the money order she purchased to pay her rent. (T. at 104). M.P. paid $430 for the money order. *Id.* She wrote out the money order to the intended recipient, the property management company that owned her building: Miles & Mohr, LLC. (T. at 105). M.P. also identified her signature on the money order. *Id.* According to M.P., she attempted to convey the money order to her landlord by placing it into the mailbox located at Discount Drug Mart on the comer of Hills and Dales and Woodlawn, in Canton, but the money order never made it to her landlord. (T. at 106). M.P. received the call from the Stark County Sheriff's Office on December 1, 2022, at approximately 1:00 a.m., informing her that they had her money order. (T. at 106-108). M.P. stated that she does not know Appellant, that she has never seen him before, and that he did not have permission to have her money order. (T. at 108).

**{¶19}** Following deliberations, the jury returned verdicts finding Appellant guilty on all counts.

{¶20} On July 24, 2023, the trial court held a sentencing hearing wherein it sentenced Appellant to sixteen (16) months for Possession of a Fentanyl-Related Compound, twelve (12) months for Aggravated Possession of Drugs, and twelve (12) months for Receiving Stolen Property, all to be served concurrently. (July 28, 2023, Judgment Entry).

{¶21} Appellant now appeals, raising the following errors for review:

ASSIGNMENTS OF ERROR

{¶22} "I. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR ACQUITTAL UNDER CRIMINAL RULE 29 WHEN THE STATE DID NOT PROVE AN ESSENTIAL ELEMENT OF RECEIVING STOLEN PROPERTY.

{¶23} "II. APPELLANT'S CONVICTION OF RECEIVING STOLEN PROPERTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**I.**

{¶24} In his first assignment of error, Appellant argues his trial counsel was ineffective for failing to move for acquittal on the charge of receiving stolen property. We disagree.

{¶25}  In *Strickland v. Washington,* the United States Supreme Court enunciated the two-prong standard for evaluating claims of ineffective assistance of counsel. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. When a defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-688. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* The Court further stated that counsel's

performance must have prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* This means that the "defendant must [also] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694.

{¶26} Here, Appellant argues that "counsel exhibited deficient performance by failing to move for acquittal pursuant to Crim.R. 29", stating that a "motion for acquittal is necessary to preserve the issue of sufficiency of the State's case for appeal, otherwise the appellate court can only review the sufficiency issue under a plain error standard." (Appellant's brief at 6).

{¶27} A Crim.R. 29 motion is asserted to test the sufficiency of the evidence. Pursuant to Crim.R. 29(A), a trial court is required to order an acquittal of "one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." *See State v. Bridgeman* (1978), 55 Ohio St.2d 261, 263, 381 N.E.2d 184."

{¶28} The Ohio Supreme Court has held that a failure to timely make a Crim.R. 29(A) motion during a jury trial does not waive an argument on appeal concerning the sufficiency of the evidence. *State v. Jones*, 91 Ohio St.3d 335, 346, 2001-Ohio-57, 744 N.E.2d 1163; *State v. Carter*, 64 Ohio St.3d 218, 223, 594 N.E.2d 595 (1992). In both *Jones* and *Carter*, the Court stated that the defendant's "not guilty" plea preserves his right to object to the alleged insufficiency of the evidence. *Id.* We have previously recognized that a Crim.R. 29 motion is not necessary to preserve the issue of sufficiency of the evidence for appeal. *State v. Henderson*, 5th Dist. Richland No. 2013–CA–0409,

2014-Ohio-3121, ¶ 22, *citing State v. Straubhaar*, 5th Dist. Stark No. 2008 CA 00106, 2009-Ohio-4757, ¶ 40.

**{¶29}** Accordingly, trial counsel did not render ineffective assistance of counsel by failing to renew the Crim.R. 29 motion at the end of the evidence.

**{¶30}** On the merits of the sufficiency issue, we note that "[a] sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law." (*State v. Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541).

**{¶31}** Appellant herein was convicted of Receiving Stolen Property, in violation of R.C. §2913.51(A), which states:

(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

**{¶32}** Appellant argues that the State failed to prove beyond a reasonable doubt that he "knew or had reasonable cause to believe that the money order executed by M. P. had been obtained through the commission o[f] a theft offense and/or did aid or abet another in doing so." (Appellant's brief at 7).

**{¶33}** "Knowingly" is defined by R.C. §2901.22(B) as follows:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense,

such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶34}** Courts have established factors to be considered in determining whether a reasonable person could conclude that a defendant knew or had reason to know that property was stolen. Factors to be considered in determining whether reasonable minds could conclude whether a defendant knew or should have known property was stolen include: "(a) the defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the thefts and the recovery of the merchandise...." *State v. Jones*, 5th Dist. Tuscarawas No. 2002 AP 05 0041, 2003-Ohio-445, ¶ 31, citing *State v. Davis* (1988), 49 Ohio App.3d 109, 112, 550 N.E.2d 966 (citations omitted).

**{¶35}** At trial, the State presented testimony from M.P. who testified that she purchased a $430.00 money order to pay her rent, that she addressed the money order to Miles & Mohr, LLC, the property management company that owned her building, and that she signed the money order and deposited it in a mailbox located at Discount Drug Mart. (T. at 103-106). The jury also heard testimony from Deputy Johnson that he found "numerous checks that were filled out, signed, and dated by 11 different people" in the truck" and also found a large trash bag sitting on the passenger side floorboard that contained [ ] mail scraps, as well as several more checks." (T. at 115). Testimony was also presented that two additional money orders were found in Appellant's possession. (T. at 116).

{¶36} There was no evidence as to how Appellant may have lawfully come to possess the money order(s) in this case other than Appellant's statement to the police that "he works for a home salvage company and often finds things inside of houses when they're restoring homes." (T. at 119).

{¶37} Furthermore, Appellant's statement to police as to finding abandoned items in houses was a matter of fact which the jury chose to disbelieve. Credibility is a question of fact to be determined by the jury and a reviewing court should not substitute its judgment for that of the jury. *See State v. Walker* (1978), 55 Ohio St.2d 208, 212.

{¶38} Based on the foregoing, we find that the jury did not lose its way or create a manifest miscarriage of justice in finding that Appellant knew or had reasonable cause to believe the property was stolen.

{¶39} We therefore find that the State presented evidence such that reasonable minds could reach different conclusions as to whether each material element of the crime of receiving stolen property had been proven beyond a reasonable doubt. *See State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394.

{¶40} Even if counsel had made a Crim.R. 29 motion for acquittal, such motion would have been denied. As such, Appellant has failed to establish prejudice. In other words, had counsel made such motion, the outcome of the case would not have been different. Therefore, this Court finds that in light of the evidence to support Appellant's conviction, trial counsel was not ineffective for failing to make a motion for acquittal.

{¶41} Appellant's first assignment of error is overruled.

**II.**

**{¶42}** In his second assignment of error, Appellant argues that his receiving stolen property conviction was against the manifest weight of the evidence. We disagree.

**{¶43}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶44}** Appellant, in his brief, makes no additional argument in support of this assignment, arguing only that the State offered insufficient evidence to satisfy the necessary element that Appellant had knowledge that the money order was obtained through the commission of a theft offense.

**{¶45}** As set forth above, upon review of the testimony, we find there was competent, credible evidence presented for the jury to find Appellant guilty of the charge of receiving stolen property, and Appellant's conviction is not against the manifest weight nor based upon insufficient evidence. We find the jury had competent credible evidence to find Appellant knew or had reasonable cause to believe the property had been stolen.

**{¶46}** It was for the jury to determine the credibility of the testimony, and in this case, it is not patently apparent that the jury lost its way. Therefore, based on the evidence

before this Court as set forth above, we do not find this to be an exceptional case in which the evidence weighs heavily against the conviction.

**{¶47}**  Appellant's second assignment of error is denied.

**{¶48}**  For the reasons stated in the foregoing opinion, the decision of the Stark County Common Pleas Court is affirmed.

By: Wise, J.

Delaney, P. J., and

Gwin, J., concur.

JWW/kw 0215